# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT DEPARTMENT
C.A. NO:

ROBERT A. DOANE on behalf of himself
and others similarly situated,

                  Plaintiff,

     v.

VISION SOLAR LLC,

                Defendant.

**RECEIVED**

JP

7/8/2021

### CLASS ACTION COMPLAINT
### AND JURY DEMAND

### PRELIMINARY STATEMENT

1.     Plaintiff Robert A. Doane ("Plaintiff" or "Doane") brings this action against

Vision Solar LLC ("Vision Solar" or "Defendant")[1] for its violations of the Massachusetts

Telephone Solicitation Act, M.G.L., c. 159C, (the "MTSA") and the Telephone Consumer

Protection Act, 47 U.S.C., § 227 *et seq*. (the "TCPA").

2.     Plaintiff makes the following allegations on information and belief (based on,

among other things, the investigation of his counsel), except those allegations relating to Plaintiff

and his own experiences with the calls that are the subject matter of this complaint, which are

based on personal knowledge.

3.     Plaintiff brings this claim against Defendant pursuant to the MTSA and its

underlying regulations for making or causing to be made unsolicited telemarketing sales calls to

---

[1] "Vision Solar" or "Defendant," as used herein, includes Defendant and/or its affiliates, agents, and/or other persons
or entities acting on its behalf.

Plaintiff's cellular telephone and to the cellular telephones of at least hundreds of Massachusetts consumers, without their express consent or permission.  Defendant's conduct in making these calls violated various provisions of the MTSA, as set forth herein.

4.      Plaintiff brings this claim against Defendant pursuant to the TCPA and its underlying regulations for making or causing to be made calls to Plaintiff's cellular telephone and to the cellular telephones of at least hundreds of Massachusetts consumers without Plaintiff's or Class members' prior express written consent, in violation of various provisions of the TCPA, as set forth in detail herein, including in Paragraphs 96-101, 121-129, 133-134.

5.      Vision Solar, without disclosing its identity, and while actively attempting to conceal its identity, entered into agreements with agent telemarketers and call centers ("the Telemarketers"), including Solar Exchange, LLC ("Solar Xchange") and Energy Exchange, engaged in illegal telemarketing, for the purposes of advertising its solar products and services to residents of Massachusetts, while Vision Solar falsely claimed it was subcontracted the call recipients' existing electricity providers.

6.      Vision Solar made at least hundreds of repetitive and abusive telemarketing calls to Massachusetts consumers' cellular telephones, including Plaintiff's cellular telephone, using spoofed numbers (likely through VoIP such that the callers are untraceable), without disclosing the identity of the callers or the identity of the party on whose behalf they were calling, and using other deceptive means aimed at concealing their identity, at least until Vision Solar was adequately convinced that a prospective customer had legitimate interest whereby they would schedule an appointment for a home visit during which, Vision Solar would reveal its identity for the first time.

7.      As a result of Vision Solar's deceptive telemarketing practices, at least hundreds of persons were knowingly and willfully called while registered on the Massachusetts do-not-call registry without the call recipients' consent, in violation of the MTSA and regulations promulgated

thereunder, and the recipients of these calls were left without a remedy or means to identify and stop the offending calls absent an expression of interest that is convincing enough for Vision Solar to arrange an in person meeting, and only then would a prospective customer learn its identity.

8.      Vision Solar is liable for the calls made to Plaintiff and Class members on its behalf, whether the calls were placed directly by Vision Solar or by the Telemarketers or Solar Exchange.

9.      Neither Plaintiff nor any of the other Class members provided prior express permission or consent to receive calls from Vision Solar or the Telemarketers or Solar Exchange, which were placed solely for telemarketing purposes.

10.     A class action is the only practical means of obtaining redress for Defendant's massive illegal telemarketing scheme, and it is consistent both with the private right of action afforded by the MTSA and the fairness and efficiency goals of Rule 23 of the Massachusetts Rules of Civil Procedure.

## THE PARTIES

11.     Plaintiff Robert A. Doane is an individual and a resident of Massachusetts and resides at 103 Prospect Street, Wakefield, Middlesex County, Massachusetts 01880.

12.     Vision Solar is a Pennsylvania Limited Liability Company with its principal place of business at 501 East Black Horse Pike, Blackwood, New Jersey 08012, engaged in the business of manufacturing and selling solar energy installations to homeowners.  Vision Solar is registered in Massachusetts as a foreign LLC, with its registered agent listed as Rocket Corporate Services, 44 School Street, Suite 505, Boston, MA 02108. Vision Solar conducts business in Massachusetts by, among other things, making telemarketing calls to Massachusetts residents and attempting to sell and selling solar-related products and services to Massachusetts residents, and it also maintains places of business in Massachusetts.

## JURISDICTION AND VENUE

13.     The Court has subject matter jurisdiction over this matter because the amount in controversy exceeds $50,000.00.

14.     This Court has personal jurisdiction over Defendant pursuant to the MTSA, M.G.L. c. 159C § 12, which states; "A court of the commonwealth may exercise personal jurisdiction over a nonresident or his executor or administrator as to an action or proceeding authorized by this chapter."

15.     This Court also has personal jurisdiction over Defendant pursuant to M.G.L., c. 223A, § 3(a), because Defendant: is registered to do business in Massachusetts; maintains places of business in Massachusetts; regularly transacts and has transacted business in Massachusetts by, among other things, making telemarketing sales calls to Massachusetts residents, including Plaintiff and Class members; solicits business in Massachusetts; and contracts to provide goods and services in Massachusetts.  The acts or conduct that are the subject matter of this action arose from Defendant's transaction of business in Massachusetts.  In addition, Defendant is "[d]oing business in Massachusetts," as defined in 201 C.M.R., § 12.01, by "[c]onducting telephonic sales calls" "to consumers in Massachusetts."

16.     Venue is proper in Middlesex County, because Plaintiff resides in this County and because a substantial part of the events or omissions giving rise to the claims occurred in this County, as at least some of the telemarketing calls that form the basis for Plaintiff's claims were made to Plaintiff's cellphone in this County.

## SUBSTANTIVE ALLEGATIONS

### *Vision Solar-Background*

17.     Vision Solar is a limited liability company founded in 2018.  Vision Solar describes itself on its website as follows:

Vision Solar is one of the fastest growing solar energy companies in the United States.  Our full-service renewable energy company that [sic.] installs service for residential homes in Pennsylvania, Arizona, New Jersey, Massachusetts and Florida.  Our rapid expansion has allowed us to be recognized as one of the top solar companies on the East Coast, with a clear path of more rapid growth to come. [2]

18.     Vision Solar maintains offices in each of the states listed above, as follows:

- Vision Solar Massachusetts, 198 Ayer Rd Suite 210, Harvard, MA 01451;

- Vision Solar Pennsylvania, 188 Lancaster Ave., Malvern, PA 19355;

- Vision Solar New Jersey, 501 E. Black Horse Pike, Blackwood, NJ 08012; and

- Vision Solar Florida, 6925 Lake Ellenor Dr., Orlando, FL 32809 and 600 Fairway Drive, Suite 206, Deerfield Beach FL 3344.[3]

19.     Vision Solar was formed by individuals from the management of a now-defunct solar energy company called Code Green Solar LLC ("Code Green").  Vision Solar Chief Executive Officer ("CEO") and founder Jonathan Seibert was Chief Operating Officer ("COO") of Code Green.[4]

20.     Starting in approximately 2016, Code Green and its management faced multiple investigations, lawsuits and criminal proceedings, and was ultimately forced to shut down in the summer of 2018 when it was raided by the FBI for owing the government approximately $18 million.[5]

21.     In May of 2019, Code Green President and CEO Charles Kartsaklis admitted to perpetrating a long-running wire fraud scheme in which Code Green defrauded the federal

---

[2] https://visionsolar.llc/about-vision-solar-nj/ (last accessed July 2, 2021).
[3] https://visionsolar.com/frequently-asked-questions-faq/ (last accessed July 2, 2021).

[4] https://www.nj.com/camden/2018/09/nj_solar_company_that_was_raided_by_feds_is_shutti.html.
[5] Id.

government out of millions of dollars by falsely claiming federal rebates for solar panels that it

never installed and pled guilty in the U.S. District Court for the District of New Jersey to one

count of wire fraud.[6]

22.     In or around November of 2020, Code Green was cited by the New Jersey

Department of Labor and Workforce Development ("NJDOL") for violations of New Jersey's

prevailing wage laws, including failure to provide the required wage on utility work, in the

amount of approximately $800,000.  The NJDOL investigation also uncovered violations for

unpaid and late payment of wages, lack of certified payroll records, and hindering/obstruction of

the investigation.  The NJDOL issued an assessment against Code Green for unpaid wages, plus

penalties and fees.[7]

23.     By the time it shut down in 2018, Code Green faced a flurry of lawsuits and owed

approximately $18 million to companies it did business with, customers and employees.[8]

24.     The trouble started as early as 2016, with several lawsuits and the commencement

of an investigation involving an FBI visit to Code Green's Cherry Hill, New Jersey office in June

of 2017.[9]

25.     There were multiple wage and hour complaints, including those leading to the

NJDOL investigation referenced above; in addition to payroll-related complaints, several

employees complained about Code Green's unethical business practices, including unauthorized

sales calls.  One former employee, James Hundley, alleged in a lawsuit that Code Green used

"unethical and illegal" tactics, including lying to customers and illegally obtaining cellphone

---

[6]https://www.justice.gov/usao-nj/pr/president-and-chief-executive-officer-now-defunct-code-green-solar-llc-admits-wire-fraudl.

[7] https://www.insidernj.com/press-release/njdol-investigation-finds-solar-company-owes-800k-unpaid-wages-workers/.

[8] https://www.nj.com/camden/2018/09/nj_solar_company_that_was_raided_by_feds_is_shutti.html.

[9] *Id.*

numbers and robocalling them.[10]

26.     In 2017, Code Green settled a lawsuit that claimed it had violated the TCPA by calling cellular phone numbers it had obtained.[11]

27.     In July of 2018, shortly after the FBI raid on Code Green's headquarters, Seibert left Code Green and started Vision Solar.[12]

28.     Significantly, Seibert, as COO, was part of Code Green management while Code Green was involved in the same illegal practices currently employed by Vision Solar and while Code Green was the subject of many complaints, investigations and lawsuits, including some addressed to such unlawful practices.

29.     The lawsuits didn't stop after Vision Solar was founded, and Vision Solar has also been sued for violations of the TCPA and similar claims.

### Vision Solar's Telemarketing Operations and its Relationship With the Telemarketers and Solar Exchange

30.     Vision Solar relies heavily if not exclusively on unlawful telemarketing to generate customers for its solar installation business.

31.     In implementing its telemarketing campaigns, Vision Solar utilizes the Telemarketers such as Solar Exchange and Energy Exchange that operate as Vision Solar's agents in conducting these campaigns.

32.     Some of the Telemarketers have close relationships with Vision Solar; an example of this is Solar Exchange, which appears to be affiliated with Vision Solar.  Indeed, one former Vision Solar employee, in a Better Business Bureau complaint, referred to Solar Exchange as a call center being run by Vision Solar.  *See* ¶ 39, *infra* ("'[Vision Solar] also run[s]

---

[10] *Id.*
[11] *Id.*
[12] *Id.*

an illegal call center solar exchange or energy exchange whatever the name of it is now'").

33.     Solar Exchange is a New Jersey limited liability company that operates call centers in New Jersey and elsewhere from which calls are placed for the purpose of lead generation.

34.     According to its August 6, 2020 Certificate of Formation (the "Certificate"), Solar Exchange has a main business address of 214 Cherry Street, Voorhees, New Jersey 08043. Solar Exchange, in the Certificate, lists Mark Getts ("Getts"), with the same Cherry Street address, as the only member or manager, and describes itself as a "marketing and consulting firm."

35.     Getts, according to his Facebook profile, is "Vice President of Operations at Solar Xchange;"[13] his profile contains several posts with Vision Solar advertisements for sales staff, including an April 19, 2019 post with the heading, "Vision Solar opening two new locations in Pennsylvania and New Jersey."[14]  Getts' profile also contains several general marketing advertisements for Vision Solar, including ads from October 8, 2018 and February 18, 2019.[15]  In addition, Getts' profile lists several Vision Solar executives as Facebook friends: Seibert; Fred Sorbello, Vice President of Sales;  Ryan Benko, Executive Vice President; and Matthew Anderton, Vice President of Inside Sales.

36.     In its telemarketing campaigns, Vision Solar, the Telemarketers (including Energy Exchange and Solar Exchange) have used, and continue to use, spoofed numbers and automatic dialing to make efficient, low cost, and illegal contacts with potential solar customers untraceable. Upon a prospective customer answering such calls, Vision Solar falsely claims that it is subcontracted by the call recipient's electricity provider, and Vision Solar does not disclose its identity during the calls. Vision Solar, upon finding a party that expresses interest under Vision Solar's false pretenses, then collects information and arranges a home visit, sending a confirming

---

[13] http://www.facebook.com/mark.getts (last visited July 2, 2021).
[14] Id.
[15] Id.

email which still does not reveal its identity. It is only at the home visit, while at the customer's door, that Vision Solar reveals its identity.

37.     Vision Solar's tactics are geared to evade liability for what it knows is illegal telemarketing, and through its tactics, Vision Solar reaps increased sales volume at a low cost, unfairly competing against those solar companies that attempt to generate business lawfully.

38.     Vision Solar's tactics are also abusive, harassing, and constitute an invasion of privacy and intrusion upon the seclusion of thousands of Massachusetts consumers, and if left unrestrained, pose a clear and present threat to the privacy and solitude of thousands of Massachusetts consumers in the future, with the potential of harming other solar companies who generate business lawfully.

39.     There are many complaints about Vision Solar and its telemarketing and other business practices online, both from consumers and former employees.  For example, one former employee said:

> "This place is probably the worst business in south Jersey.  I knew these guys back when they were code green and its pretty much ran [sic] the same way . . . They will do whatever they need to too [sic] get someone to sign for solar they harass and bully people. This place needs to be shut down oh and not to mention mr seibert likes to not pay employees for jobs they do at work if he doesn't agree with they're [sic.] work ethic. No wonder this place has all these bad reviews. If you want a good solar company DO NOT GO WITH VISION SOLAR!!! . . . They also run an illegal call center solar exchange or energy exchange whatever the name of it is now."

Feb. 12, 2021.   https://www.bbb.org/us/pa/philadelphia/profile/solar-installation/vision-solar-llc-0241-236023377/complaints (last visited Feb. 26, 2021).

40.     Numerous complaints from consumers about Vision Solar's practices are also available online, for example:

- "Vision Solar LLC from Blackwood, NJ, is using a third-party vendor to inaccurately sell its services, misrepresenting the purpose of the sales visit to your residence and then sending untrained sales people to your home.  I'd avoid Vision Solar LLC like the plague.

Our story: we live in MA.  We received a call from an outfit called Energy Exchange." Feb. 15, 2021.[16]

- "Never asked for solar, never filled anything out.  My number is unlisted and unpublished and on the Do Not Call list yet Vision keeps calling.  Gave John a Cease and Desist 7/31/19 and they still call."  Date: Oct. 8, 2019, Not Recommended Reviews for Vision Solar-Yelp.[17]

### *Defendant's Calls to Plaintiff*

41.     Plaintiff's telephone number, (781) 245-6577, is assigned to a cellular service.

42.     Plaintiff placed his cellular telephone number, (781) 245-6577, on the Massachusetts do-not-call registry on November 8, 2014.

43.     Despite taking the affirmative step of registering their telephone numbers on the Massachusetts do-not-call registry, Vision Solar caused automated telemarketing calls to be made to persons in Massachusetts, including Plaintiff and Class members, using spoofed numbers, attempting to generate solar business.

44.     Vision Solar placed not less than ten (10) such telemarketing calls to Plaintiff's cellphone without identifying itself with a legitimate name, and Plaintiff's attempts to call these spoofed numbers back would reveal the numbers were inoperable or invalid.

45.     During these calls, Plaintiff's requests for the do-not-call policy were met with disconnection, and, despite Plaintiff's demands that the calls stop, the calls continued.

46.     Plaintiff, in a tactical attempt to identity the offending callers, during one of the calls received, feigned some interest by disclosing, at the caller's request, that his electricity provider was Eversource, and providing a name, though rather than providing his real name, he instead provided the alias "Richard."

---

[16] http://www.energysage.com/supplier/20920/vision-solar/.
[17] https://www.yelp.com/not_recommended_reviews/vision-solar-blackwood.

47.     On October 21, 2020, at 10:04 AM, Plaintiff received a call on his cellular phone from a number appearing as 339-499-4100. Plaintiff, upon picking up the call, stated "hello" several times, and no one responded, so Plaintiff hung up.

48.     On October 22, 2020, at 10:06 AM, Plaintiff received another call from the same number, 339-499-4100. Plaintiff, upon picking up the call, stated hello, and after a pause and audible click, a woman identified herself as "Ashley."

49.     Ashley, without revealing the identity of the company on whose behalf she was calling, merely stated her company works "alongside Eversource" and that the reason for the call was because Massachusetts passed a clean energy mandate program giving homeowners the option to go solar with no money out of pocket. Ashley claimed the program would lower homeowners' electric bills by 40% every month, and that they were reaching out to see if Plaintiff qualified.

50.     During the conversation with Plaintiff, Ashley suggested she had access to Plaintiff's electricity usage information with Eversource at his 103 Prospect Street, Wakefield, Massachusetts residence, stating; "I see that you spend over $80 a month on your electricity bill, is that still accurate?"

51.     Plaintiff requested that Ashley identify the company she was with, to which she replied, "We're subcontracted by Eversource and our company is called "Energy Exchange." Ashley then stated that "because of the clean energy mandate Eversource has to produce 30% more clean energy by next year or they will get a fine, so they have us reaching out to the homeowners to send free information about solar and provide them with a free solar analysis." Ashley indicated to Plaintiff that in order to qualify Plaintiff for the program, Plaintiff would have to have a high credit score. After Plaintiff revealed that his credit score was good, Ashley stated that Plaintiff qualified for the program and that she would add Plaintiff's information into their system.

52.     At no time did Ashley disclose that she was calling on behalf of Vision Solar.

53.     A short time later, Ashley was displaced from the call by another individual who identified himself as "Calvin," and that he was the supervisor.  Calvin confirmed the information Plaintiff provided to Ashley, asked if Plaintiff if he ever had a solar consultation before, asked about roof exposure, and then asked for a date and time to set an appointment. Plaintiff agreed to Saturday, October 24, 2020, at 10:00 AM. Calvin asked to have Plaintiff's latest electric bill for the appointment to check energy usage, but also said that if it was not available, they could "pull it up on the tablet," again suggesting they have access to Plaintiff's information, and were operating as a subcontractor for Eversource. Calvin indicated he would send Plaintiff confirmation and Plaintiff's email address was provided to Calvin for that purpose.

54.     At no time did Calvin disclose he was calling on behalf of Vision Solar.

55.     Plaintiff asked Calvin if the number appearing on the caller identification could be called back, and the last seven digits of the number appearing on Plaintiff's caller identification, "499-4100," were read off to Calvin, to which Calvin replied that a customer service number would be sent via email.

56.     On the same date, October 22, 2020, at 10:13 AM, an email was received from "Appointments.notification@five9.com" stating;

> Congratulations RICHARD DOANE,
> Your solar consultation has been set for 10:00 AM on 10/24/2020
> After performing the energy assessment, the consultant will be able to give you all the information you'll need about how solar could save you money. Please have a recent electric bill and any questions you may have handy.
> If you have any questions in the meantime, please reach out to us at (888) 439-1609
>
> Thank you and we look forward to it!

57.     Plaintiff discovered by calling the telephone number in the preceding paragraph, that the number belonged to Solar Exchange, and that accordingly, the email was sent, and some of the calls to Plaintiff, as alleged herein, were placed by Solar Exchange, as part of an agreement or

arrangement it had with Vision Solar.

58.     The pre-set reply email identified energyxchange.scheduler@gmail.com.

59.     Nowhere in the e-mail Plaintiff received is Vision Solar identified.

60.     On October 24, 2020, Plaintiff received a call from 717-844-5077, asking for "Mr. Richard" stating she was calling regarding a 10:00 AM appointment, and that their representative was on his way and would be 15-20 minutes late.

61.     At no time did the caller identify herself as calling from or on behalf of Vision Solar.

62.     At 10:45 AM, a man appeared, walking from up the street a substantial distance from his vehicle, onto Plaintiff's property, and upon Plaintiff approaching the door and greeting him, and asking for his business card, only then did he present a clip-on badge identifying himself as "Jaydeep Soni" with "Vision Solar."

63.     Plaintiff photographed Mr. Soni's badge,[18] and collected information from Mr. Soni, and having identified Vision Solar as responsible for the calls, then ended the meeting.

64.     At no time was Vision Solar either directly or indirectly given consent or permission to call Plaintiff's cellular phone to solicit sales of solar-related products or services, or for any purpose.

### Plaintiff's and Class Members' Receipt of Unsolicited Telemarketing Sales Calls

65.     Within a twelve-month period preceding the two calls from 339-499-4100, Plaintiff received not less than ten (10) calls to his cellular telephone from Defendant (or one of its Telemarketers or Solar Exchange) attempting to sell solar-related products and services without revealing its identity.

66.     The calls preceding the two calls from 339-499-4100 to Plaintiff were made using VoIP spoofing (a mechanism which permits companies to make calls over the Internet while

---

[18] The photograph of the badge had a bar code that if scanned directed to "visionsolarllc.com"

concealing the actual number making the call and without ownership of the number made to misleadingly appear on the caller identification).

67.     Plaintiff attempted to call back 339-499-4100, which resulted in a message stating "please leave a message after the tone."

68.     These calls were made without disclosure of: a) the identity of the telemarketer or lead provider making the calls; or b) the identity of the party on whose behalf the calls were being made.

69.     Plaintiff later discovered that the not less than ten (10) calls to his cellular phone using spoofed numbers, preceding the two calls from 339-499-4100, were made by Vision Solar or the Telemarketers or Solar Exchange for the purpose of determining initial interest and to solicit sales of solar related products and services through a second series of calls made to Plaintiff from 339-499-4100, without proper registration or consent, falsely claiming they were "subcontractors of Eversource," and as "Energy Exchange," and "EnergyXChange" when in fact, as learned during an in-person meeting, the calls were actually from Vision Solar.

70.     None of the calls disclosed Vision Solar as the calling party nor did the email communication with Plaintiff disclose Vision Solar as the sender of the email; and even when the Vision Solar representative appeared for an in-person meeting, he parked at a distance, and walked to Plaintiff's home.

71.     Prior to and during the time that the calls were made to Plaintiff's cellular phone, Plaintiff's name and cellular telephone number, as well as the names and telephone numbers of other Class members, were listed on the Massachusetts do not call registry, maintained by the Office pursuant to M.G.L., c. 159C, § 2 and 201 C.M.R., §§ 12.03 and 12.05.

72.     Plaintiff never provided any consent or permission to Vision Solar to place calls to his cellular telephone, and the same is true for the other Class members.

73.     Vision Solar never registered with the Massachusetts Office of Consumer Affairs and Business Regulation ("the Office") as a telephone solicitor, as required by 201 C.M.R., § 12.04.  In addition, neither Solar Exchange nor Energy Exchange registered with the Office as a telephone solicitor.

74.     Vision Solar never checked, consulted, or reviewed the most current version of the Massachusetts do-not-call registry, prior to making calls to Plaintiff and Class members, as required by 201 C.M.R., § 12.04 (3).

75.     In addition to the calls made to Plaintiff, Defendant made, or caused to be made in the manner described above, numerous calls within the same twelve-month period, and prior to and thereafter, to each of at least hundreds of other Massachusetts residents, many of whom, like Plaintiff, were registered with the Massachusetts do-not-call registry.

76.     As is the case with the calls made to Plaintiff, the calls made to other Class members were made: a) by persons not registered with the Office as telemarketers in Massachusetts; b) using falsified and displaced caller identification; c) without disclosing the identity of the telemarketing company or the ultimate seller; d) to persons registered with the Massachusetts do-not-call registry; and e) without the Class member's prior express consent or permission.

### *Vision Solar's Agency Relationship With its Telemarketers*

77.     At all times relevant, including but not limited to October 2020, Vision Solar utilized the services of the Telemarketers (including Solar Exchange and Energy Exchange[19]) to advertise, promote and sell Vision Solar's solar services.  The Telemarketers operated as agents of Vision Solar in this process.

---

[19] Also known as "EnergyXchange."

78.     The Telemarketers were not, at any relevant time, registered with the Office—a fact that Vision Solar either knew or should have known.

79.     At all times relevant, including but not limited to October, 2020, Vision Solar authorized the Telemarketers to solicit business on its behalf through use of telemarketing.

80.     At all times relevant, including but not limited to October, 2020, Vision Solar had control over the Telemarketers' actions on its behalf.  For example:

    a.      Vision Solar limited the type of consumers that the Telemarketers could solicit for Vision Solar;

    b.      Vision Solar specified the geographical areas within which the Telemarketers could solicit business for Vision Solar;

    c.      Vision Solar decided whether, and under what circumstances, it would accept a lead from the Telemarketers;

    d.      Vision Solar instructed the Telemarketers with respect to the volume of calling and the leads it would purchase from them; and

    e.      Vision Solar had day-to-day control over the actions of the Telemarketers with respect to the conduct of the various lead campaigns in which they were engaged, including the ability to prohibit the Telemarketers from using an automatic telephone dialing system, illegal spoofing and other illegal methods to contact potential customers of Vision Solar.

81.     At all times relevant, including but not limited to October 2020, the Telemarketers were compensated by Vision Solar for each lead that they generated on behalf of Vision Solar.

82.     At all times relevant, including but not limited to October 2020, the Telemarketers, with the knowledge and the assent of Vision Solar and as part of Vision Solar's marketing campaign, contacted Massachusetts consumers on their cellular telephones using

caller ID "spoofing" and automatic telephone dialing systems without their prior express consent or permission and while these consumers were listed on the Massachusetts do-not-call registry.

83.     At all times relevant, including but not limited to October 2020, when the Telemarketers would generate a lead for Vision Solar, the lead would be transferred to Vision Solar, and Vision Solar would thereafter directly contact the customer to solicit sales of its solar services.

84.     At all times relevant, the Telemarketers had the actual authority of Vison Solar to make the illegal calls to Plaintiff and Class members complained of herein.

85.     The calls placed to Plaintiff and Class members were within the scope of the Telemarketers' actual or, in the alternative, apparent authority of Vision Solar.

86.     At all times relevant, including but not limited to October 2020, Vision Solar directly and illegally profited from the aforementioned efforts of the Telemarketers and ratified the actions of the Telemarketers by knowingly accepting the benefits of their illegal activities.

87.     Vision Solar is vicariously liable for the acts and omissions of its Telemarketers in violation of the TCPA and its underlying regulations.

88.     The FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 92-90, Memorandum and Order, 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995).

89.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (2013) ("May 2013 FCC Ruling").

90.     Vision Solar was legally responsible for ensuring that the Telemarketers complied with the TCPA even if Vision Solar did not make the calls itself.

*Defendant's Violations of the MTSA*

91.     The MTSA and the regulations promulgated under the authority of the MTSA impose strict pre-conditions, limitations and restrictions on unsolicited telephonic sales calls made to Massachusetts residents, and any such calls not in compliance with any of these pre-conditions, limitations, and restrictions are prohibited.

92.     Neither Defendant nor any of the Telemarketers (nor any of their agents or affiliates) are registered with the Office, as required by 201 C.M.R. § 12.04. Telephone solicitors engaging in unsolicited telephonic sales calls to Massachusetts consumers are required to "properly register on an annual basis with the Office." *Id.* Proper registration requires various steps, including submission of a written application containing, among other things, the telephone solicitor's name, address, telephone number and name of agent and address for service of process, and payment of an annual registration fee. *Id.* By failing to comply with these requirements, Defendant failed to satisfy a basic, threshold requirement for conducting telephone solicitations in Massachusetts, *i.e.*, that telephone solicitors must "have an approved registration prior to soliciting any Massachusetts consumers." 201 C.M.R. § 12.04(3). By virtue of this noncompliance, Defendant are in violation of the MTSA.

93.     Vision Solar failed in its obligation to keep and consult the Massachusetts do not call registry prior to calling Plaintiff and other Class members, in violation of 201 C.M.R., §§ 12.02(6) and 12.04(3) (requiring telemarketers to keep the most recent version of the do-not-call registry and check or consult it prior to making any unsolicited telephonic sales calls). *Id.* Defendant and the Telemarketers and Solar Exchange also failed to comply with the related requirement that they "institute procedures for honoring the list of Massachusetts consumers who

have [registered with the Massachusetts do-not-call registry]." 201 C.M.R., §12.02(6).  Indeed,
Defendant and the Telemarketers, because they were not properly registered as telemarketers in
Massachusetts, could not have complied with the foregoing requirements because only "properly
registered telephone solicitors" are eligible to "receive the [Massachusetts] do not call registry."
201 C.M.R. §§ 12.04(2) and (4).

94.     Vision Solar violated M.G.L. c. 159C, § 3 (and 201 C.M.R. § 12.02(1)) by calling
Plaintiff and other Class members who were registered with the Massachusetts do-not-call
registry, and they violated c. 159C, § 1 by calling Plaintiff and Class members after they
expressed their desire not to receive further calls.

95.     Vision Solar also made calls without providing proper disclosures about itself, in
violation of c. 159C, § 5A (and 201 C.M.R. § 12.02(7)); and made calls using falsified and
displaced caller identification, in violation of c. 159C, § 4 (and 201 C.M.R. § 12.02(5)).

### *Defendant's Violations of the TCPA*

96.     Vision Solar made calls to Plaintiffs' and Class members' cellular phones using
an automatic telephone dialing system ("ATDS") without the prior express written consent of
Plaintiff or the Class members in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

97.     Vision Solar failed to ensure that Vision Solar, the Telemarketers and Solar
Exchange maintained a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);

98.     Vision Solar failed to provide Plaintiff and Class members, upon demand, Vision
Solar's, the Telemarketers' and Solar Exchange's do-not-call policy, in violation of 47 C.F.R. §
64.1200(d)(1);

99.     Vision Solar failed to ensure that its personnel and the personnel of the
Telemarketers and Solar Exchange were informed and trained in the existence and use of the do-
not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);

100.    Vision Solar failed to provide to Plaintiff and Class members the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and the telephone number or address at which the person or entity may be contacted, in violation of 47 C.F.R. § 64.1200(d)(4); and

101.    Vision Solar and its Telemarketers and Solar Exchange engaged in and caused a pattern or practice of initiating telephone solicitations to Plaintiff's and Class members' cellular phones without Plaintiff's express written consent on at least ten (10) occasions in violation of 47 U.S.C. § 64.1200(c)(2).

### *Injuries Suffered*

102.    Plaintiff and the other Class members have been injured as a result of Defendant's violation of the MTSA and its underlying regulations in at least the following ways: harassment, invasion of privacy, and interference resulting from the calls, as well as costs incurred due to wear and tear on their phones, cellular phone battery usage, and use of cellular calling time.

### *Defendant's Unlawful Conduct is Continuing—Need for Injunctive Relief*

103.    As of the filing of this Complaint, Defendant's unlawful conduct in violation of the MTSA is continuing, and Plaintiff continued to receive unsolicited calls from Vision Solar, including as recently as on or about November 24, 2020.  Said conduct, including the unsolicited, harassing and unlawful calls, as alleged herein, will continue, and will inflict further damage on Plaintiff and Class members, unless and until a court issues an order directing Defendant to cease and desist from said conduct.

104.    Accordingly, while monetary damages may be sufficient to compensate Plaintiff and Class members for past violations, injunctive relief is necessary to stop Defendant's unlawful course of conduct from continuing.

## CLASS ACTION ALLEGATIONS

105.     Plaintiff brings this action pursuant to Mass. R. Civ. P. 23 on behalf of a Class as follows:

All Massachusetts residents to whom Defendant and/or third parties acting on its behalf, made more than one unsolicited telephonic sales call within any twelve (12) month period at any time from July 9, 2018 through the present date (the "MTSA Class").

All Massachusetts residents to whom Defendant and/or third parties acting on its behalf, made more than one unsolicited telephonic sales call within a twelve (12) month period at any time from July 9, 2018 through the present date, where the called number was registered on the Massachusetts do-not-call Registry (the "The Massachusetts Do Not Call Subclass" or "MDNC Subclass").

All Massachusetts residents who received telemarketing calls to their cellular telephones from Defendant and/or third parties acting on its behalf, without the call recipient's prior express written consent from July 8, 2018 through the present date (the "TCPA" Class).

106.     Common questions of law and fact exist as to all Class and MDNC Subclass members and such questions predominate over any questions solely affecting any individual member. Such questions common to the Class include but are not limited to:

a.   Whether Defendant properly registered as telephone solicitors with the Office;

b.   Whether Defendant kept and consulted the latest version of the Massachusetts do-not-call registry;

c.   Whether Defendant placed more than one unsolicited telephonic sales call to Plaintiff and Class members within a twelve-month period, without Plaintiff's and Class members' express consent or permission;

d.   Whether Defendant called Plaintiff and Class members after they were registered with the Massachusetts do-not-call registry;

e.   Whether Defendant called Plaintiff and Class members after they expressed their desire not to receive further calls;

21

f.   Whether Defendant made calls to Plaintiff and Class members using falsified and/or displaced caller identification;

g.   Whether Defendant made calls to Plaintiff and Class members without proper required disclosures about the telemarketing company and the ultimate seller;

h.   Whether Defendant violated the provisions of the MTSA and the underlying regulations;

i.   Whether Defendant made calls to Plaintiff's and Class members' cellular phones without their prior express written consent;

j.   Whether Defendant made calls to Plaintiff's and Class members' cellular phones using an automatic telephone dialing system or an artificial or prerecorded voice;

k.   Whether Defendant failed to insure that Defendant and its telemarketers maintained a do-not-call list;

l.   Whether Defendant failed, on demand, to provide Plaintiff with Defendant's and the Telemarketers do-not-call policy;

m.   Whether Defendant failed to provide to Plaintiff the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and the telephone number or address at which the person or entity may be contacted; and

n.   Whether Plaintiff and Class members are entitled to damages and the appropriate measure of damages.

107.   Plaintiff's claims are typical of the claims of the other members of the Classes and the MDNC Subclass. The factual and legal bases of Defendant's liability to Plaintiff and the other members of the MTSA Class and the MDNC Subclass are the same: Defendant violated the MTSA and its underlying regulations by placing unsolicited telephonic sales calls to Plaintiff and Class members without their express consent or permission, and Defendant violated the

TCPA by making unsolicited telemarketing calls to the cellular phones of Plaintiff and the other

members of the TCPA Class without their prior express written consent.  .

108.     Plaintiff will fairly and adequately protect the interests of the Classes and the

MDNC Subclass. Plaintiff has no interests that might conflict with the interests of the Classes or

the MDNC Subclass.  Plaintiff will pursue his claims vigorously, and he has retained counsel

competent and experienced in class and complex litigation, including with regard to the claims

alleged herein.

109.     Class action treatment is superior to other alternative methods for the fair and

efficient adjudication of the controversy alleged herein. Such treatment will permit a large

number of similarly situated persons to prosecute their common claims in a single forum

simultaneously, efficiently, and without the duplication of effort and expense that numerous

individual actions would entail. There are at least hundreds of members of the Classes and the

MDNC Subclass, such that joinder of all members is impracticable.

110.     No difficulties are likely to be encountered in the management of this class action

that would preclude its maintenance as a class action.

**CLAIM UNDER M.G.L., c. 93A, § 2**

111.     On December 22, 2020, Plaintiff served Defendant with a written demand for

relief pursuant to M.G.L., c. 93A, § 9(3) (the "Demand Letter"), asserting that Defendant

engaged in unfair and deceptive conduct in trade or commerce, in connection with the acts and

omissions alleged in this Complaint.  On June 1, 2021, Plaintiff again served the Demand Letter

by sending a copy thereof to attorneys who Plaintiff reasonably anticipated would be

representing Defendant with respect to the claims and allegations stated herein.  To date,

Defendant has not responded to the Demand Letter.  Attached hereto as **Exhibit 1** is a copy of

the Demand Letter (without Exhibit A thereto).[20]  Plaintiff may later amend this Complaint to

add a claim under c. 93A.

## CLAIMS FOR RELIEF

### COUNT I
### (Violation of the MTSA – on behalf of Plaintiff and the Class)

112.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set

forth herein. Plaintiff brings this Count I on behalf of himself and the Class.

113.    Defendant made unsolicited telephonic sales calls to Plaintiff and Class members.

Defendant made these calls to Plaintiff and Class members: a) without Plaintiff's and Class

members' express consent or permission, in violation of M.G.L., c. 159C, § 1; b) after Plaintiff

and Class members expressed their desire not to receive further calls, in violation of c. 159C, § 1;

c) by using falsified and displaced caller identification, in violation of M.G.L., c. 159C, § 4 (and

201 C.M.R. § 12.02(5)); and d) without proper disclosures about the telemarketer and the

ultimate seller, in violation of c. 159C, § 5A (and 201 C.M.R. § 12.02(7)).

114.    Defendant also violated several other regulations promulgated under the MTSA.

Defendant failed to register with the Office, in violation of 201 C.M.R., § 12.04.  Telephone

solicitors making calls to Massachusetts consumers are required "to properly register on an

annual basis with the Office." *Id*.  Proper registration requires various steps, including

submission of a written application containing, among other things, the telephone solicitor's

name, address, telephone number and name of agent and address for service of process; and

payment of an annual registration fee.  *Id*.  By failing to comply with these requirements,

Defendant has failed to satisfy a basic, threshold requirement for conducting telephone

solicitations in Massachusetts, *i.e.*, that telephone solicitors must "have an approved registration

---

[20] Exhibit A to the Demand Letter is an earlier draft of this Complaint.

prior to soliciting any Massachusetts consumers." 201 C.M.R., § 12.04(3).

115.   Defendant has also failed to comply with the requirement of 201 C.M.R. § 12.04(3) that it keep and consult the latest version of the Massachusetts do-not-call registry.

116.   As a result of this conduct, Defendant has violated the MTSA, and it is liable to Plaintiff and Class members for damages, including actual damages or statutory damages of up to $5,000 for each MTSA violation, whichever is greater.

## COUNT II
**(Violation of the MTSA Do Not Call Provisions-on behalf of the Plaintiff and the MDNC Subclass)**

117.   Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein. Plaintiff brings this Count II on behalf of himself and the MDNC Subclass.

118.   Defendant made unsolicited telephonic sales calls to Plaintiff and MDNC Subclass members when Plaintiff and MDNC Subclass members were registered with the Massachusetts do-not-call registry, in violation of M.G.L., c. 159C, § 3 (and 201 C.M.R. § 12.02(1)).

119.   As a result of this conduct, Defendant has violated the MTSA, and it is liable to Plaintiff and MDNC Subclass members for damages, including actual damages or statutory damages of up to $5,000 per violation, whichever is greater.

## COUNT III
**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(A))**

120.   The allegations in the preceding paragraphs of this Complaint are realleged and incorporated by reference.

121.   In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

122.   The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an

automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

123.    The TCPA defines ATDS as "equipment which has the capacity…to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

124.    According to findings of the Federal Communication Commission ("FCC"), the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

125.    The FCC requires prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. In *the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 ¶ 33 (2012).

126.    Vision Solar, by and through its Telemarketers, violated 47 U.S.C. §227(b)(1)(A)(iii) by placing not less than ten(10) telemarketing calls to Plaintiff's cellular phone using an ATDS, prerecorded messages and spoofed numbers without Plaintiff's prior express written consent.

127.    Pursuant to 47 U.S.C. § 227(b)(3)(B), Vision Solar is liable to Plaintiff for a minimum of $500 per violation, which includes multiple violations for each call.

128.    Pursuant to 47 U.S.C. § 227(b)(3)(C), willful or knowing violations of the TCPA trigger treble damages.

129.    The conduct in violation of 47 U.S.C. §227(b)(1)(A)(iii) was willful and knowing.

130.    Plaintiff is entitled to have his damages trebled for the aforesaid willful and knowing violations of the TCPA.

## COUNT IV
### (Violations of the Telephone Consumer Protection Act, §227(c)(1) to (4))

131.    The allegations in the preceding paragraphs of this Complaint are realleged and incorporated by reference.

132.    A private right of action exists pursuant to 47 U.S.C. § 227(c)(5) for violations of the regulations promulgated pursuant to the TCPA for the protection of telephone subscriber privacy rights.

133.    47 C.F.R. § 64.1200(c) and (d) set forth certain procedures with which a telemarketer must comply prior to the initiation of a telemarketing call.

134.    Vision Solar did directly, and through the Telemarketers, violate 47 C.F.R. § 64.1200 *et seq.* in at least the following respects:

a.      By failing to ensure that Vision Solar and the Telemarketers maintained a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);

b.      By failing to provide Plaintiff, upon his demand, Vision Solar's and the Telemarketers' do-not-call policy, in violation of 47 C.F.R. § 64.1200(d)(1);

c.      By failing to ensure that its personnel and the personnel of the Telemarketers were informed and trained in the existence and use of the do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);

d.      By failing to provide to Plaintiff the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and the telephone number or address at which the person or entity may be contacted, in violation of 47 C.F.R. § 64.1200(d)(4); and

e.      By engaging in and causing a pattern or practice of initiating telephone solicitations to Plaintiff's cellular phone without Plaintiff's express written consent on at least ten (10) occasions in violation of 47 U.S.C. § 64.1200(c)(2).

135.    Pursuant to 47 U.S.C.A. § 227(c)(5) and the regulations promulgated thereunder, Vision Solar is liable to Plaintiff for a minimum of $500 for each violation of the TCPA, which includes multiple violations for each call.

136.    Vision Solar's aforesaid conduct in violation of 47 U.S.C.A. § 227(c)(5) and the regulations promulgated thereunder, was willful and knowing.

137.    Plaintiff is entitled to have his single damages trebled for these willful and knowing violations.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other Class members and Subclass members, demands judgment against Defendant as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the Class and Subclasses and appoint Plaintiff's counsel as counsel for the Class and Subclasses;

B. That the Court Award actual monetary damages arising from Defendant's violations of law or statutory or liquidated damages for each violation, whichever is greater, and where applicable, attorneys' fees and costs;

C. That the Court enjoin Defendant from additional and continuing violations of the MTSA and the TCPA; and

D. That the Court award pre-judgment interest, costs and such further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims so triable.

Dated:   July 9, 2021

/s/ Richard B. Reiling
Richard B. Reiling, BBO #629203
BOTTONE | REILING
63 Atlantic Avenue, 3rd Floor
Boston, MA 02110
Telephone: 617.412.4291
Email:  richard@bottonereiling.com

/s/ David Pastor
David Pastor, BBO # 391000
PASTOR LAW OFFICE, LLP
63 Atlantic Avenue, 3d Floor
Boston, MA 02110
Telephone: 617.742.9700
Email:  dpastor@pastorlawoffice.com

*Counsel for Plaintiff and the Class*