UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO: 1:21-cv-11285-IT

ROBERT A. DOANE on behalf of himself
and others similarly situated,

Plaintiff,

v.

VISION SOLAR LLC,

Defendant.

## FIRST AMENDED CLASS ACTION COMPLAINT
## AND JURY DEMAND

## PRELIMINARY STATEMENT

1.      Plaintiff Robert A. Doane ("Plaintiff" or "Doane") brings this action against

Vision Solar LLC ("Vision Solar" or "Defendant")[1] for its violations of the Massachusetts

Telephone Solicitation Act, M.G.L., c. 159C, (the "MTSA"), the Telephone Consumer Protection

Act, 47 U.S.C., § 227 *et seq*. (the "TCPA") and the Massachusetts Consumer Protection Act,

M.G.L., c. 93A.

2.      Plaintiff makes the following allegations on information and belief (based on,

among other things, the investigation of his counsel), except those allegations relating to Plaintiff

and his own experiences with the calls that are the subject matter of this complaint, which are

based on personal knowledge.

---

[1] "Vision Solar" or "Defendant," as used herein, includes Defendant and/or its affiliates, agents, and/or other persons or entities acting on its behalf.

3.     Plaintiff brings this claim against Defendant pursuant to the MTSA and its underlying regulations for making or causing to be made unsolicited telemarketing sales calls to Plaintiff's cellular telephone and to the cellular telephones of at least hundreds of Massachusetts consumers, without their prior express consent or permission, in violation of various provisions of the MTSA, as set forth herein in detail herein.

4.     Plaintiff brings this claim against Defendant pursuant to the TCPA and its underlying regulations for making or causing to be made calls to Plaintiff's cellular telephone and to the cellular telephones of at least hundreds of Massachusetts consumers without Plaintiff's or Class members' prior express written consent, in violation of various provisions of the TCPA, as set forth in detail herein.

5.     Vision Solar, without disclosing its identity, and while actively attempting to conceal its identity, entered into agreements with telemarketing agents and call centers ("the Telemarketers"), including Solar Xchange, LLC ("Solar Xchange") and Energy Exchange, engaged in illegal telemarketing for the purposes of marketing and selling its solar products and services to residents of Massachusetts, while Vision Solar falsely claimed that the call recipients' existing electricity providers subcontracted them to call.

6.     Vision Solar made at least hundreds of repetitive and abusive telemarketing calls to Massachusetts consumers' cellular telephones, including Plaintiff's cellular telephone, using spoofed numbers (likely through VoIP such that the callers are untraceable), without disclosing the identity of the callers or the identity of the party on whose behalf they were calling and using other deceptive means aimed at concealing their identity, at least until Vision Solar was adequately convinced that a prospective customer had legitimate interest whereby they would schedule an appointment for a home visit during which Vision Solar would reveal its identity for the first time.

7.      As a result of Vision Solar's deceptive and unlawful telemarketing practices, at least hundreds of persons were knowingly and willfully called while registered on the Massachusetts do-not-call registry without the call recipients' consent, in violation of the MTSA and regulations promulgated thereunder, and the recipients of these calls were left without a remedy or means to identify the responsible parties and stop the offending calls absent an expression of interest that is convincing enough for Vision Solar to arrange an in-person meeting, and only then would a prospective customer learn Vision Solar's identity.

8.      Vision Solar is liable for the calls made to Plaintiff and Class members on its behalf, whether the calls were placed directly by Vision Solar or by the Telemarketers.

9.      Neither Plaintiff nor any of the other Class members provided prior express written consent or any prior express consent or permission to receive calls from Vision Solar or the Telemarketers, which were placed solely for telemarketing purposes.

10.     A class action is the only practical means of obtaining redress for the numerous Massachusetts residents affected by Defendant's massive illegal telemarketing scheme, and it is consistent both with the private right of action afforded by the MTSA, the TCPA, and c. 93A, and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## THE PARTIES

11.     Plaintiff Robert A. Doane is an individual and a resident of Massachusetts and resides at 103 Prospect Street, Wakefield, Middlesex County, Massachusetts 01880.

12.     Vision Solar is a Pennsylvania Limited Liability Company with its principal place of business at 501 East Black Horse Pike, Blackwood, New Jersey 08012, engaged in the business of manufacturing and selling solar energy installations to homeowners.  Vision Solar is registered in Massachusetts as a foreign LLC, with its registered agent listed as Rocket Corporate Services, 44 School Street, Suite 505, Boston, MA 02108. Vision Solar conducts business in

Massachusetts by, among other things, making telemarketing calls to Massachusetts residents and attempting to sell and selling solar-related products and services to Massachusetts residents, and it also maintains places of business in Massachusetts.

## JURISDICTION AND VENUE

13.     This Court has personal jurisdiction over Defendant pursuant to the MTSA, M.G.L. c. 159C § 12, which states; "A court of the commonwealth may exercise personal jurisdiction over a nonresident or his executor or administrator as to an action or proceeding authorized by this chapter."

14.     This Court also has personal jurisdiction over Defendant pursuant to M.G.L. c. 223A, § 3(a), because Defendant: is registered to do business in Massachusetts; maintains places of business in Massachusetts; regularly transacts and has transacted business in Massachusetts by, among other things, making telemarketing sales calls to Massachusetts residents, including Plaintiff and Class members; solicits business in Massachusetts; and contracts to provide goods and services in Massachusetts.  The acts or conduct that are the subject matter of this action arose from Defendant's transaction of business in Massachusetts.  In addition, Defendant is "[d]oing business in Massachusetts," as defined in 201 C.M.R., § 12.01, by "[c]onducting telephonic sales calls" "to consumers in Massachusetts."

15.     Venue is proper in this District, because Plaintiff resides in this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District, as at least some of the telemarketing calls that form the basis for Plaintiff's claims were made to Plaintiff's cellphone in this District.

## SUBSTANTIVE ALLEGATIONS

### *Vision Solar-Background*

16.     Vision Solar is a limited liability company founded in 2018, and describes itself

on its website as follows:

> Vision Solar is one of the fastest growing solar energy companies in the
> United States.  Our full-service renewable energy company that [sic.]
> installs service for residential homes in Pennsylvania, Arizona, New
> Jersey, Massachusetts and Florida.  Our rapid expansion has allowed us to
> be recognized as one of the top solar companies on the East Coast, with a
> clear path of more rapid growth to come. [2]

17.     Vision Solar maintains offices in each of the states listed above, as
follows:

- Vision Solar Massachusetts, 198 Ayer Rd Suite 210, Harvard, MA 01451;

- Vision Solar Pennsylvania, 188 Lancaster Ave., Malvern, PA 19355;

- Vision Solar New Jersey, 501 E. Black Horse Pike, Blackwood, NJ
  08012; and

- Vision Solar Florida, 6925 Lake Ellenor Dr., Orlando, FL 32809 and 600
  Fairway Drive, Suite 206, Deerfield Beach FL 3344.[3]

18.     Vision Solar was formed by individuals from the management of a now-defunct

solar energy company called Code Green Solar LLC ("Code Green").  Vision Solar's Chief

Executive Officer ("CEO") and founder Jonathan Seibert was Chief Operating Officer ("COO")

of Code Green.[4]

19.     Starting in approximately 2016, Code Green and its management faced multiple

---

[2] https://visionsolar.llc/about-vision-solar-nj/ (last accessed September 27, 2021).

[3] https://visionsolar.com/frequently-asked-questions-faq/ (last accessed September 27, 2021).

[4]https://www.nj.com/camden/2018/09/nj_solar_company_that_was_raided_by_feds_is_shutti.html. (last accessed
September 27, 2021).

investigations, lawsuits, and criminal proceedings, and was ultimately forced to shut down in the summer of 2018 when it was raided by the FBI for owing the government approximately $18 million.[5]

20.      In May of 2019, Code Green President and CEO Charles Kartsaklis admitted to perpetrating a long-running wire fraud scheme in which Code Green defrauded the federal government out of millions of dollars by falsely claiming federal rebates for solar panels that it never installed and pled guilty in the U.S. District Court for the District of New Jersey to one count of wire fraud.[6]

21.      In or around November of 2020, Code Green was cited by the New Jersey Department of Labor and Workforce Development ("NJDOL") for violations of New Jersey's prevailing wage laws, including failure to provide the required wage on utility work, in the amount of approximately $800,000.  The NJDOL investigation also uncovered violations for unpaid and late payment of wages, lack of certified payroll records, and hindering/obstruction of the investigation.  The NJDOL issued an assessment against Code Green for unpaid wages, plus penalties and fees.[7]

22.      By the time it shut down in 2018, Code Green faced a flurry of lawsuits and owed approximately $18 million to companies it did business with, customers and employees.[8]

23.      The trouble started as early as 2016, with several lawsuits and the commencement of an investigation involving an FBI visit to Code Green's Cherry Hill, New Jersey office in June

---

[5] *Id.*

[6] https://www.justice.gov/usao-nj/pr/president-and-chief-executive-officer-now-defunct-code-green-solar-llc-admits-wire-fraud. (last accessed September 27, 2021).

[7] https://www.insidernj.com/press-release/njdol-investigation-finds-solar-company-owes-800k-unpaid-wages-workers/. (last accessed September 27, 2021).

[8] https://www.nj.com/camden/2018/09/nj_solar_company_that_was_raided_by_feds_is_shutti.html. (last accessed September 27, 2021).

of 2017.[9]

24.     There were multiple wage and hour complaints, including those leading to the NJDOL investigation referenced above; in addition to payroll-related complaints, several employees complained about Code Green's unethical business practices, including unauthorized sales calls.  One former employee, James Hundley, alleged in a lawsuit that Code Green used "unethical and illegal" tactics, including lying to customers and illegally obtaining cellphone numbers and robocalling them.[10]

25.     In 2017, Code Green settled a lawsuit that claimed it had violated the TCPA by illegally calling cellular phone numbers it had obtained.[11]

26.     In July of 2018, shortly after the FBI raid on Code Green's headquarters, Seibert left Code Green and started Vision Solar.[12]

27.     Significantly, Seibert, as COO, was part of Code Green management while Code Green was involved in the same illegal practices currently employed by Vision Solar and while Code Green was the subject of many complaints, investigations, and lawsuits, including some addressed to such unlawful practices.

28.     The lawsuits didn't stop after Vision Solar was founded, and Vision Solar has also been sued for violations of the TCPA and similar claims.

***Vision Solar's Telemarketing Operations and its Relationship
With the Telemarketers***

29.     Vision Solar relies heavily if not exclusively on unlawful telemarketing to generate customers for its solar installation business.

---

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

30.     In implementing its telemarketing campaigns, Vision Solar utilizes the Telemarketers such as Solar Xchange and Energy Exchange that operate as Vision Solar's agents in conducting these campaigns.

31.     Some of the Telemarketers have close relationships with Vision Solar; an example of this is "Solar Xchange," which appears to be affiliated with Vision Solar.  Indeed, one former Vision Solar employee, in a Better Business Bureau complaint, referred to Solar Xchange as a call center being run by Vision Solar.  *See* ¶ 39, *infra* ("'[Vision Solar] also run[s] an illegal call center solar exchange or energy exchange whatever the name of it is now'").

32.     Solar Xchange LLC ("Solar Xchange") is a New Jersey limited liability company that operates call centers in New Jersey, Florida, and elsewhere from which calls are placed for the purpose of lead generation.

33.     According to its August 6, 2020 Certificate of Formation (the "Certificate"), Solar Xchange has a main business address of 214 Cherry Street, Voorhees, New Jersey 08043. Solar Xchange, in the Certificate, lists Mark Getts ("Getts"), with the same Cherry Street address, as the only member or manager, and describes itself as a "marketing and consulting firm."

34.     Getts, according to his Facebook profile, is "Vice President of Operations at Solar Xchange;"[13] and his profile contains several posts with Vision Solar advertisements for sales staff, including an April 19, 2019 post with the heading, "Vision Solar opening two new locations in Pennsylvania and New Jersey."[14]  Getts' profile also contains several general marketing advertisements for Vision Solar, including ads from October 8, 2018 and February 18, 2019.[15]  In addition, Getts' profile lists several Vision Solar executives as Facebook friends: Seibert; Fred

---

[13] http://www.facebook.com/mark.getts (last visited September 27, 2021).

[14] *Id.*

[15] *Id*.

Sorbello, Vice President of Sales;  Ryan Benko, Executive Vice President; and Matthew Anderton, Vice President of Inside Sales.  Getts, according to his LinkedIn profile, describes himself as "Chief Executive Officer at Solar Xchange LLC, July 2018 – Present.[16] Solar Xchange describes itself in its LinkedIn profile as a "Nationwide solar lead generation call center located in NJ and FL."[17]

35.     On Getts' Facebook page, there is a post dated July 3, 2020 stating "Get in on the ground floor we are expanding rapidly" with a link to an Indeed advertisement for "Call Sales Representative" allegedly for "Solar Exchange" in Boca Raton, FL.[18] The Indeed ad requires the applicant to "have the ability to cold call / deal with transfers from cold calls." Further, the ad requires the applicant to "be able to take 200 + calls a day." [19]

36.     In Vision Solar's telemarketing campaigns, Vision Solar and the Telemarketers (including Energy Exchange and Solar Xchange) have used, and continue to use, spoofed numbers and automatic dialing to make efficient, low cost, and illegal contacts with potential solar customers untraceable. Upon a prospective customer answering such calls, Vision Solar falsely claims that it is subcontracted by the call recipient's electricity provider, and Vision Solar does not disclose its identity during the calls. Vision Solar, upon finding a party that expresses interest under Vision Solar's false pretenses, then collects information and arranges a home visit, sending a confirming email which still does not reveal its identity. It is only at the home visit, while at the prospective customer's door, that Vision Solar reveals its identity.

---

[16] https://www.linkedin.com/in/mark-getts-88b4b4103/# (last visited September 27, 2021).

[17] https://www.linkedin.com/company/solar-xchange-llc/ (last visited September 27, 2021).

[18] According to the Florida Secretary of State Corporations Division, there is no Solar Exchange listed in the state. However, there is a Solar Xchange listed as a foreign llc with Getts as the registered agent, and the company is listed as revoked for failing to file annual report.

[19] https://www.indeed.com/viewjob?jk=b35ffe11eeb1e736&advn=9436630210693847&from=hp&from=mobRdr&tk=1ecba68ai31o0000&adid=351410358&fbclid=IwAR3QPVd1H2Cq_P4YWr8Cj_-Ah98UnfqK0LrMZJQvc343tuf1g9BNezyeDqQ&utm_source=%2Fm%2F&utm_medium=redir&utm_campaign=dt (last visited September 27, 2021).

37.     Vision Solar's tactics are geared to evade liability for what it knows is illegal telemarketing, and through its tactics, Vision Solar reaps increased sales volume at a low cost, unfairly competing against those solar companies that attempt to generate business lawfully.

38.     Vision Solar's tactics are also abusive, harassing, and constitute an invasion of privacy and intrusion upon the seclusion of thousands of Massachusetts consumers, and if left unrestrained, pose a clear and present threat to the privacy and solitude of thousands of Massachusetts consumers in the future, with the potential of harming other solar companies who generate business lawfully.

39.     There are many complaints about Vision Solar and its telemarketing and other business practices online, both from consumers and former employees.  For example, one former employee said:

> "This place is probably the worst business in south Jersey.  I knew these guys back when they were code green and its pretty much ran [sic] the same way . . . They will do whatever they need to too [sic] get someone to sign for solar they harass and bully people. This place needs to be shut down oh and not to mention mr seibert likes to not pay employees for jobs they do at work if he doesn't agree with they're [sic.] work ethic. No wonder this place has all these bad reviews. If you want a good solar company DO NOT GO WITH VISION SOLAR!!! . . . They also run an illegal call center solar exchange or energy exchange whatever the name of it is now."

Feb. 12, 2021.   https://www.bbb.org/us/pa/philadelphia/profile/solar-installation/vision-solar-llc-0241-236023377/complaints.

40.     Numerous complaints from consumers about Vision Solar's practices are also available online, for example:

- "Vision Solar LLC from Blackwood, NJ, is using a third-party vendor to inaccurately sell its services, misrepresenting the purpose of the sales visit to your residence and then sending untrained sales people to your home.  I'd avoid Vision Solar LLC like the plague.  Our story: we live in MA.  We received a call from an outfit called Energy Exchange."  Feb. 15, 2021.[20]

---

[20] http://www.energysage.com/supplier/20920/vision-solar/. (last visited September 27, 2021).

- "Never asked for solar, never filled anything out.  My number is unlisted and unpublished and on the Do Not Call list yet Vision keeps calling.  Gave John a Cease and Desist 7/31/19 and they still call."   Date: Oct. 8, 2019, Not Recommended Reviews for Vision Solar-Yelp.[21]

***Defendant's Calls to Plaintiff***

41.   Plaintiff's telephone number, (781) 245-6577, is assigned to a cellular service.

42.   On December 30, 2003, Plaintiff placed his cellular telephone number, (781) 245-6577, on the national do-not-call registry. Attached hereto as **Exhibit 1** is a copy of the confirmation of said number being so registered.

43.   Pursuant to G.L. c. 159C §7, a number registered with the national do-not-call registry is automatically included as registered in the Massachusetts do-not-call registry.

44.   Despite taking the affirmative step of registering their telephone numbers on the national and Massachusetts do-not-call registries, Vision Solar caused automated telemarketing calls to be made to persons in Massachusetts, including Plaintiff and Class members, using spoofed numbers, attempting to generate solar business.

45.   All of the calls Vision Solar and/or the Telemarketers made to Plaintiff had the same fact pattern, *i.e.*, the calls were made with what were later determined to be inoperable or invalid numbers, and upon picking up there was a delay and a click before an agent came on the line. The agents who came on the line each appeared to be reading from the same script.

46.   When attempts were later made to call the numbers from which the calls appear to have been made, these attempts consistently resulted in an indication that the numbers were inoperable or invalid (such as a recording stating that the number appearing on Plaintiff's caller identification display ("Caller ID") was not in service).

47.   Vision Solar placed not less than ten (10) such telemarketing calls to Plaintiff's

---

[21] https://www.yelp.com/not_recommended_reviews/vision-solar-blackwood.

cellphone (including the calls specifically referenced below) without identifying itself with a legitimate name, and using what Plaintiff determined to be spoofed numbers. Plaintiff's belief that these calls were placed from spoofed numbers is based on the fact that when he tried to call the numbers that appeared on his Caller ID for the calls, Plaintiff was unable to reach those numbers, and thus they appeared to be invalid. In addition, Plaintiff never consented to receive any of these calls.

48. As an example, one of these calls occurred on October 16, 2020, from 781-773-4903, at 4:49 p.m., and when Plaintiff picked up, after a pause and audible click, an agent identifying himself as "Jordan" and contacting homeowners regarding solar service came on the line. The agent utilized the same script as earlier calls and asked the same questions. The agent asked for Plaintiff's email address, and Plaintiff refused to provide it. Plaintiff asked if the agent could be reached at the number on Plaintiff's Caller ID, after which the agent terminated the call. Plaintiff did not provide prior consent for this call.

49. When Plaintiff attempted to call the number back, a message was played indicating the number was not a working number.

50. The agents who called Plaintiff asked Plaintiff for his name and did not appear to know his name or address; in other words, they appeared to be "cold calling," *i.e.*, the agents were not calling from a pre-existing list, but were calling randomly, to a number registered on the national and Massachusetts do-not-call registries, a clear indication that Plaintiff's number was randomly generated and that Defendant and/or The Telemarketers used a device capable of performing this function.

51. During these calls, Plaintiff's requests for the do-not-call policy were met with disconnection, and, despite Plaintiff's demands that the calls stop, the calls continued.

52. Plaintiff, in a tactical attempt to identity the offending callers, during one of the

calls received (a call made without his prior consent), feigned some interest by disclosing, at the caller's request, that his electricity provider was Eversource, and providing a name, though rather than providing his real name, he instead provided the alias "Richard." Plaintiff's effort initially failed, since after he asked questions, the caller terminated the call.

53.     On October 21, 2020, at 10:04 a.m., Plaintiff received a call on his cellular phone from a number appearing as 339-499-4100. Plaintiff, upon picking up the call, stated "hello" several times, and no one responded, so Plaintiff hung up.  As was the case with the previous calls, Plaintiff did not provide his prior consent to receive this call.

54.     On October 22, 2020, at 10:06 a.m., Plaintiff received another call from the same number, 339-499-4100. Plaintiff, upon picking up the call, stated hello, and after a pause and audible click, an agent identified herself as "Ashley." Plaintiff did not provide his prior consent to receive this call.

55.     Ashley, without revealing the identity of the company on whose behalf she was calling, merely stated her company works "alongside Eversource" and that the reason for the call was because Massachusetts passed a clean energy mandate program giving homeowners the option to go solar with no money out of pocket. Ashley claimed the program would lower homeowners' electric bills by 40% every month, and that they were reaching out to see if Plaintiff qualified.

56.     During the conversation with Plaintiff, Ashley suggested she had access to Plaintiff's electricity usage information with Eversource at his 103 Prospect Street, Wakefield, Massachusetts residence, stating; "I see that you spend over $80 a month on your electricity bill, is that still accurate?"

57.     Plaintiff requested that Ashley identify the company she was with, to which she replied, "We're subcontracted by Eversource and our company is called 'Energy Exchange.'" Ashley then stated that "because of the clean energy mandate Eversource has to produce 30% more clean

energy by next year or they will get a fine, so they have us reaching out to the homeowners to send free information about solar and provide them with a free solar analysis." Ashley indicated to Plaintiff that in order to qualify Plaintiff for the program, Plaintiff would have to have a high credit score. After Plaintiff revealed that his credit score was good, Ashley stated that Plaintiff qualified for the program and that she would add Plaintiff's information into their system. At no time did Ashley disclose that she was calling on behalf of Vision Solar.

58.     A short time later, Ashley was displaced from the call by another individual who identified himself as "Calvin," and that he was the supervisor.  Calvin confirmed the information Plaintiff provided to Ashley, asked Plaintiff if he ever had a solar consultation before, asked about roof exposure, and then asked for a date and time to set an appointment. Plaintiff agreed to Saturday, October 24, 2020, at 10:00 a.m.   Calvin asked to have Plaintiff's latest electric bill for the appointment to check energy usage, but also said that if it was not available, they could "pull it up on the tablet," again suggesting they have access to Plaintiff's information, and were operating as a subcontractor for Eversource. Calvin indicated he would send Plaintiff confirmation, and Plaintiff's email address was provided to Calvin for that purpose.

59.     At no time did Calvin disclose he was calling on behalf of Vision Solar.

60.     Plaintiff asked Calvin if the number appearing on the Caller ID could be called back, and the last seven digits of the number appearing on Plaintiff's Caller ID, "499-4100," were read off to Calvin, to which Calvin replied that a customer service number would be sent via email.

61.     On the same date, October 22, 2020, at 10:13 a.m., an email was received from "Appointments.notification@five9.com" stating;

Congratulations RICHARD DOANE,

Your solar consultation has been set for 10:00 AM on 10/24/2020
After performing the energy assessment, the consultant will be able to give you all the information you'll need about how solar could save you money. Please have a recent electric bill and any questions you may have handy.

14

If you have any questions in the meantime, please reach out to us at (888) 439-1609

Thank you and we look forward to it!

62.     At a later time, Plaintiff attempted to call the 339-499-4100 number back to see if it was a valid number. Upon doing so, a message was played stating "The number you have dialed is not a working number. Please check the number and dial again."

63.     Plaintiff discovered by calling the telephone number that was provided in the email, 888-439-1609, that the number belonged to Solar Xchange, leading Plaintiff to conclude that the email that he received, and some of the calls to Plaintiff, as described herein, were placed by Solar Xchange, as part of an agreement or arrangement it had with Vision Solar.

64.     The pre-set reply email identified energyxchange.scheduler@gmail.com.

65.     Nowhere in the e-mail Plaintiff received is Vision Solar identified.

66.     On October 24, 2020, Plaintiff received a call from 717-844-5077, asking for "Mr. Richard" stating she was calling regarding a 10:00 a.m. appointment, and that their representative was on his way and would be 15-20 minutes late.

67.     At no time did the caller identify herself as calling from or on behalf of Vision Solar. At 10:45 a.m., a man appeared, walking from up the street a substantial distance from his vehicle, onto Plaintiff's property, and upon Plaintiff approaching the door and greeting him, and asking for his business card, only then did he present a clip-on badge identifying himself as "Jaydeep Soni" with "Vision Solar."

68.     Plaintiff photographed Mr. Soni's badge,[22] and collected information from Mr. Soni, and having identified Vision Solar as responsible for the calls, then ended the meeting. Mr. Soni engaged in high-pressure sales tactics, and after Plaintiff probed him for information, Plaintiff

---

[22] The photograph of the badge had a bar code that if scanned directed to "visionsolarllc.com"

advised Mr. Soni that he was not interested and terminated the visit.

69. At no time was Vision Solar (or any telemarketer, including Solar Xchange or Energy Exchange) either directly or indirectly given prior consent or permission to call Plaintiff's cellular phone to solicit sales of solar-related products or services, or for any purpose.

70. On November 5, 2020, Plaintiff received a call from 781-877-5757. After Plaintiff stated hello, and after a pause and audible click, an agent came on the line claiming to be "John from Smart Solar." The agent seemed to be reading from the same script and asked the same questions as in the prior calls, after which he claimed Plaintiff to be qualified. Plaintiff never provided prior consent for this call.

71. Plaintiff, during the November 5, 2020, call could hear in the background other agents, one of which was on another call stating he was "John from Solar Solutions."

72. The agent who called Plaintiff seemed to be reading from the same script as the agent heard in the background, and the agent who called asked Plaintiff several questions, including the identity of Plaintiff's electricity supplier, which Plaintiff revealed was Eversource. Another agent then got on the call and asked similar questions and stated he would be transferring the call.

73. The call was transferred, and a female agent picked up, identifying herself as "Laura" and claiming to be working "alongside National Grid and Eversource Energy. Laura asked if she was speaking with the homeowner at 70 Blackthorn Road.

74. Plaintiff advised Laura that this was one of his addresses.

75. Laura then stated the reason for her call was about the "clean energy mandate going on in Massachusetts" and that she is "required to reach out to homeowners." Laura further stated the call was about going solar with no money out of pocket and to get 40% off the electric bill. She asked about Plaintiff's credit rating, and other information, and after Plaintiff answered, another agent got on the line who identified himself as "Cory, one of the supervisors."

76.     The agent, Cory, stated there were two addresses in his file, 70 Blackthorn and 103 Prospect Street. The agent continued to ask several questions, after which he stated he was with an "energy assessment firm." Plaintiff asked the agent what company he was with, to which he responded "Energy Exchange."

77.     Plaintiff asked the agent if he could be reached at the number appearing on Plaintiff's Caller ID, and Plaintiff read the number off, to which the agent stated, "yep."

78.     Plaintiff, for the sole purpose of determining whether Vision Solar was the sole party benefiting from the illegal calls, agreed to an appointment on Saturday, November 7, 2020.

79.     Plaintiff asked who would be showing at Plaintiff's door, to which the agent advised Plaintiff that it would be Energy Exchange, and that he would send an email to Plaintiff to confirm the appointment, and the call was thereafter terminated.

80.     Plaintiff attempted to call 781-877-5757 back and a message was played stating, "You have reached a nonworking number."

81.     On November 5, 2020, Plaintiff received an email confirming the appointment for November 7, 2020, at 10:00 a.m., from "appointments.notification@five9.com" The reply to address in the email appeared as energyxchange.scheduler@gmail.com.

82.     On November 7, 2020, two individuals appeared at Plaintiff's residence at 103 Prospect Street. Plaintiff asked if they were with Solar Xchange, to which one of the agents stated, "We are not." The other agent stated, "We get our appointments from Solar Xchange." Plaintiff told the agents that he had already met with Vision Solar, and Plaintiff showed the agents a photograph of the prior agent's (Mr. Soni's) badge and advised the two agents that Plaintiff was informed that Solar Xchange would be appearing. Plaintiff requested to see their identification, after which the agents presented a badge with the name "Vision Solar." One of the agents from Vision Solar was identified as Schuyler Wilkerson. With Plaintiff present, the Vison Solar agent appeared to be calling his

company and told them that Plaintiff visited with Vision Solar before, and that he was expecting a different company. The agent handed the phone to Plaintiff, and the agent on the phone asked a few questions. Plaintiff asked who solar Xchange was, and the agent stated, "Solar Xchange is our call center." Plaintiff advised the agent that he would not deal with Vision Solar again and that this was made clear on the first meeting.

### *Plaintiff's and Class Members' Receipt of Unsolicited Telemarketing Sales Calls*

83.     As stated above in ¶ 47, Plaintiff received not less than ten (10) calls to his cellular telephone from Defendant (and/or the Telemarketers) attempting to sell solar-related products and services without revealing its identity.

84.     The calls preceding the two calls from 339-499-4100 to Plaintiff were made using VoIP spoofing (a mechanism which permits companies to make calls over the Internet while concealing the actual number making the call and without ownership of the number made to misleadingly appear on the caller identification).

85.     These calls were made without disclosure of: a) the identity of the telemarketer or lead provider making the calls; or b) the identity of the party on whose behalf the calls were being made.

86.     Plaintiff later discovered that the calls to his cellular phone using spoofed numbers, preceding the two calls from 339-499-4100, were made by Vision Solar or the Telemarketers for the purpose of determining initial interest and to solicit sales of solar related products and services through a second series of calls made to Plaintiff from 339-499-4100, without proper registration or consent, falsely claiming they were "subcontractors of Eversource."

89.     Plaintiff never provided any consent or permission for Vision Solar or the Telemarketers to place calls to his cellular telephone, and the same is true for the other Class members.

90.     Vision Solar never registered with the Massachusetts Office of Consumer Affairs and Business Regulation ("the Office") as a telephone solicitor, as required by 201 C.M.R., § 12.04.  In addition, neither Solar Xchange nor Energy Exchange registered with the Office as a telephone solicitor.

91.     Vision Solar never checked, consulted, or reviewed the most current version of the Massachusetts do-not-call registry, prior to making calls to Plaintiff and Class members, as required by 201 C.M.R., § 12.04 (3).

92.     In addition to the calls made to Plaintiff, Defendant made, or caused to be made in the manner described above, numerous calls within the same twelve-month period, and prior to and thereafter, to each of at least hundreds of other Massachusetts residents, many of whom, like Plaintiff, were registered with the Massachusetts do-not-call registry.

93.     As is the case with the calls made to Plaintiff, the calls made to other Class members were made: a) by persons not registered with the Office as telemarketers in Massachusetts; b) using falsified and displaced caller identification; c) without disclosing the identity of the telemarketing company or the ultimate seller; d) to persons registered with the Massachusetts do-not-call registry; and e) without the Class member's prior express consent or permission.

### *Vision Solar's Agency Relationship With its Telemarketers*

94.     At all times relevant, including but not limited to October 2020, Vision Solar utilized the services of the Telemarketers (including Solar Xchange and Energy Exchange[23]) to advertise, promote and sell Vision Solar's solar services.  The Telemarketers operated as agents of Vision Solar in this process.

---

[23] Also known as "EnergyXchange."

95.     The Telemarketers were not, at any relevant time, registered with the Office—a fact that Vision Solar either knew or should have known.

96.     At all times relevant, Vision Solar authorized the Telemarketers to solicit business on its behalf through use of telemarketing.

97.     At all times relevant, Vision Solar had control over the Telemarketers' actions on its behalf.  For example:

        a.      Vision Solar limited the type of consumers that the Telemarketers could solicit for Vision Solar;

        b.      Vision Solar specified the geographical areas within which the Telemarketers could solicit business for Vision Solar;

        c.      Vision Solar decided whether, and under what circumstances, it would accept a lead from the Telemarketers;

        d.      Vision Solar instructed the Telemarketers with respect to the volume of calling and the leads it would purchase from them; and

        e.      Vision Solar had day-to-day control over the actions of the Telemarketers with respect to the conduct of the various lead campaigns in which they were engaged, including the ability to prohibit the Telemarketers from using an automatic telephone dialing system, illegal spoofing and other illegal methods to contact potential customers of Vision Solar.

98.     At all times relevant, the Telemarketers were compensated by Vision Solar for each lead that they generated on behalf of Vision Solar.

99.     At all times relevant, the Telemarketers, with the knowledge and the assent of Vision Solar and as part of Vision Solar's marketing campaign, contacted Massachusetts consumers on their cellular telephones using caller ID "spoofing" and automatic telephone

dialing systems without their prior express consent or permission and while these consumers were listed on the national and Massachusetts do-not-call registries.

100.   At all times relevant, when the Telemarketers would generate a lead for Vision Solar, the lead would be transferred to Vision Solar, and Vision Solar would thereafter directly contact the customer to solicit sales of its solar services.

101.   At all times relevant, the Telemarketers had the actual authority of Vison Solar to make the illegal calls to Plaintiff and Class members complained of herein.

102.   The calls placed to Plaintiff and Class members were within the scope of the Telemarketers' actual or, in the alternative, apparent authority of Vision Solar.

103.   At all times relevant, Vision Solar directly and illegally profited from the aforementioned efforts of the Telemarketers and ratified the actions of the Telemarketers by knowingly accepting the benefits of their illegal activities.

104.   Vision Solar is vicariously liable for the acts and omissions of its Telemarketers in violation of the TCPA and its underlying regulations.

105.   The FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 92-90, Memorandum and Order, 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995).

106.   The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (2013) ("May 2013 FCC Ruling").  Vision Solar was legally responsible for ensuring that the Telemarketers complied with the TCPA even if Vision Solar did not make the calls itself.

### *Defendant's Violations of the MTSA*

107.    The MTSA and the regulations promulgated under the authority of the MTSA impose strict pre-conditions, limitations and restrictions on unsolicited telephonic sales calls made to Massachusetts residents, and any such calls not in compliance with any of these pre-conditions, limitations, and restrictions are prohibited.

108.    Neither Defendant nor any of the Telemarketers (nor any of their agents or affiliates) are registered with the Office, as required by 201 C.M.R. § 12.04. Telephone solicitors engaging in unsolicited telephonic sales calls to Massachusetts consumers are required to "properly register on an annual basis with the Office." *Id.* Proper registration requires various steps, including submission of a written application containing, among other things, the telephone solicitor's name, address, telephone number and name of agent and address for service of process, and payment of an annual registration fee. *Id.* By failing to comply with these requirements, Defendant failed to satisfy a basic, threshold requirement for conducting telephone solicitations in Massachusetts, *i.e.*, that telephone solicitors must "have an approved registration prior to soliciting any Massachusetts consumers." 201 C.M.R. § 12.04(3). By virtue of this noncompliance, Defendant are in violation of the MTSA.

109.    Vision Solar failed in its obligation to keep and consult the Massachusetts do not call registry prior to calling Plaintiff and other Class members, in violation of 201 C.M.R., §§ 12.02(6) and 12.04(3) (requiring telemarketers to keep the most recent version of the do-not-call registry and check or consult it prior to making any unsolicited telephonic sales calls). *Id.* Defendant and the Telemarketers also failed to comply with the related requirement that they "institute procedures for honoring the list of Massachusetts consumers who have [registered with the Massachusetts do-not-call registry]." 201 C.M.R., §12.02(6). Indeed, Defendant and the Telemarketers, because they were not properly registered as telemarketers in Massachusetts,

could not have complied with the foregoing requirements because only "properly registered telephone solicitors" are eligible to "receive the [Massachusetts] do not call registry." 201 C.M.R. §§ 12.04(2) and (4).

110.    Vision Solar violated M.G.L. c. 159C, § 3 (and 201 C.M.R. § 12.02(1)) by calling Plaintiff and other Class members who were registered with the Massachusetts do-not-call registry, and they violated c. 159C, § 1 by calling Plaintiff and Class members after they expressed their desire not to receive further calls.

111.    Vision Solar also made calls without providing proper disclosures about itself, in violation of c. 159C, § 5A (and 201 C.M.R. § 12.02(7)); and made calls using falsified and displaced caller identification, in violation of c. 159C, § 4 (and 201 C.M.R. § 12.02(5)).

### *Defendant's Violations of the TCPA*

112.    Vision Solar made calls to Plaintiffs' and Class members' cellular phones using an automatic telephone dialing system ("ATDS") without the prior express written consent of Plaintiff or the Class members in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

113.    Vision Solar failed to ensure that Vision Solar and the Telemarketers maintained a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);

114.    Vision Solar failed to provide Plaintiff and Class members, upon demand, Vision Solar's and the Telemarketers' do-not-call policy, in violation of 47 C.F.R. § 64.1200(d)(1);

115.    Vision Solar failed to ensure that its personnel and the personnel of the Telemarketers were informed and trained in the existence and use of the do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);

116.    Vision Solar failed to provide to Plaintiff and Class members the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and the telephone number or address at which the person or entity may be contacted, in violation of 47

C.F.R. § 64.1200(d)(4); and

117.   Vision Solar and the Telemarketers engaged in and caused a pattern or practice of initiating telephone solicitations to Plaintiff's and Class members' cellular phones without Plaintiff's express written consent on at least ten (10) occasions in violation of 47 U.S.C. § 64.1200(c)(2).

### *Injuries Suffered*

118.   Plaintiff and the other Class members have been injured as a result of Defendant's violations of the MTSA, the TCPA and c, 93A and their underlying regulations in at least the following ways: harassment, invasion of privacy, and interference resulting from the calls, as well as costs incurred due to wear and tear on their phones, cellular phone battery usage, and use of cellular calling time.

### *Defendant's Unlawful Conduct is Continuing—Need for Injunctive Relief*

119.   As of the filing of this Complaint, Defendant's unlawful conduct in violation of the MTSA, the TCPA, and M,G.L., c. 93A is continuing, and Plaintiff continued to receive unsolicited calls from Vision Solar, including as recently as on or about November, 2020.  Said conduct, including the unsolicited, harassing and unlawful calls, as alleged herein, will continue, and will inflict further damage on Plaintiff and Class members, unless and until the issuance of a court order directing Defendant to cease and desist from said conduct.

120.   Accordingly, while monetary damages may be sufficient to compensate Plaintiff and Class members for past violations, injunctive relief is necessary to stop Defendant's unlawful course of conduct from continuing.

### CLASS ACTION ALLEGATIONS

121.   Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a Class as follows:

All Massachusetts residents to whom Defendant and/or third parties acting on its behalf, made more than one unsolicited telephonic sales call within any twelve (12) month period at any time from July 8, 2018 through the present date (the "MTSA Class").

All Massachusetts residents to whom Defendant and/or third parties acting on its behalf, made more than one  unsolicited telephonic sales call within a twelve (12) month period at any time from July 9, 2018 through the present date, where the called number was registered on the Massachusetts do-not-call Registry (the "The Massachusetts Do Not Call Subclass" or "MDNC Subclass").

All Massachusetts residents who received telemarketing calls to their cellular telephones from Defendant and/or third parties acting on its behalf, without the call recipient's prior express written consent from July 8, 2018 through the present date (the "TCPA" Class).

122.    Common questions of law and fact exist as to all Class and MDNC Subclass members and such questions predominate over any questions solely affecting any individual member. Such questions common to the Class include but are not limited to:

a.    Whether Defendant properly registered as a telephone solicitor with the Office;

b.    Whether Defendant kept and consulted the latest version of the Massachusetts do- not- call registry;

c.    Whether Defendant placed more than one unsolicited telephonic sales call to Plaintiff and Class members within a twelve-month period, without Plaintiff's and Class members' express consent or permission;

d.    Whether Defendant called Plaintiff and Class members after they were registered with the Massachusetts do-not-call registry;

e.    Whether Defendant called Plaintiff and Class members after they expressed their desire not to receive further calls;

f.    Whether Defendant made calls to Plaintiff and Class members using falsified and/or displaced caller identification;

g.    Whether Defendant made calls to Plaintiff and Class members without proper required disclosures about the telemarketing company and the ultimate seller;

h.    Whether Defendant violated the provisions of the MTSA and/or the TCPA and their underlying regulations;

i.    Whether Defendant made calls to Plaintiff's and Class members' cellular phones without their prior express written consent;

j.    Whether Defendant made calls to Plaintiff's and Class members' cellular phones using an automatic telephone dialing system or an artificial or prerecorded voice;

k.    Whether Defendant failed to insure that Defendant and its telemarketers maintained a do-not-call list;

l.    Whether Defendant failed, on demand, to provide Plaintiff with Defendant's and the Telemarketers' do-not-call policy;

m.    Whether Defendant failed to provide to Plaintiff the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and the telephone number or address at which the person or entity may be contacted;

n.    Whether Defendant's conduct as alleged herein constituted unfair or deceptive conduct in trade or commerce in violation of G.L. c. 93A, § 2; and

o.    Whether Plaintiff and Class members are entitled to damages and the appropriate measure of damages.

123.    Plaintiff's claims are typical of the claims of the other members of the Classes and the MDNC Subclass. The factual and legal bases of Defendant's liability to Plaintiff and the other members of the Classes and the MDNC Subclass are the same: Defendant violated the MTSA and its underlying regulations by placing unsolicited telephonic sales calls to Plaintiff and Class members without their express consent or permission, and Defendant violated the TCPA by making unsolicited telemarketing calls to the cellular phones of Plaintiff and the other members of the TCPA Class without their prior express written consent.

124.    Plaintiff will fairly and adequately protect the interests of the Classes and the MDNC Subclass. Plaintiff has no interests that might conflict with the interests of the Classes or the MDNC Subclass.  Plaintiff will pursue his claims vigorously, and he has retained counsel competent and experienced in class and complex litigation, including with regard to the claims alleged herein.

125.    Class action treatment is superior to other alternative methods for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are at least hundreds of members of the Classes and the MDNC Subclass, such that joinder of all members is impracticable.

126.    No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action.

## CLAIMS FOR RELIEF

### COUNT I
### (Violation of the MTSA – on behalf of Plaintiff and the MTSA Class)

127.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein. Plaintiff brings this Count I on behalf of himself and the Class.

128.    Defendant made unsolicited telephonic sales calls to Plaintiff and Class members. Defendant made these calls to Plaintiff and Class members: a) without Plaintiff's and Class members' express consent or permission, in violation of M.G.L., c. 159C, § 1; b) after Plaintiff and Class members expressed their desire not to receive further calls, in violation of c. 159C, § 1; c) by using falsified and displaced caller identification, in violation of M.G.L., c. 159C, § 4 (and 201 C.M.R. § 12.02(5)); and d) without proper disclosures about the telemarketer and the ultimate seller, in violation of c. 159C, § 5A (and 201 C.M.R. § 12.02(7)).

129.     Defendant also violated several other regulations promulgated under the MTSA. Defendant failed to register with the Office, in violation of 201 C.M.R., § 12.04.  Telephone solicitors making calls to Massachusetts consumers are required "to properly register on an annual basis with the Office."  *Id*.  Proper registration requires various steps, including submission of a written application containing, among other things, the telephone solicitor's name, address, telephone number and name of agent and address for service of process; and payment of an annual registration fee.  *Id*.  By failing to comply with these requirements, Defendant has failed to satisfy a basic, threshold requirement for conducting telephone solicitations in Massachusetts, *i.e.*, that telephone solicitors must "have an approved registration prior to soliciting any Massachusetts consumers."  201 C.M.R., § 12.04(3).

130.     Defendant has also failed to comply with the requirement of 201 C.M.R. § 12.04(3) that it keep and consult the latest version of the Massachusetts do-not-call registry.

131.     As a result of this conduct, Defendant has violated the MTSA, and it is liable to Plaintiff and Class members for damages, including actual damages or statutory damages of up to $5,000 for each MTSA violation, whichever is greater.

## COUNT II
### (Violation of the MTSA Do Not Call Provisions-on behalf of Plaintiff and the MDNC Subclass)

132.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein. Plaintiff brings this Count II on behalf of himself and the MDNC Subclass.

133.     Defendant made unsolicited telephonic sales calls to Plaintiff and MDNC Subclass members when Plaintiff and MDNC Subclass members were registered with the Massachusetts do-not-call registry, in violation of M.G.L., c. 159C, § 3 (and 201 C.M.R. § 12.02(1)).

134.     As a result of this conduct, Defendant has violated the MTSA, and it is liable to

Plaintiff and MDNC Subclass members for damages, including actual damages or statutory damages of up to $5,000 per violation, whichever is greater.

## COUNT III
**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(A)-on behalf of Plaintiff and the TCPA Class)**

135.   Plaintiff incorporates the allegations from all preceding paragraphs as if fully set forth herein. Plaintiff brings this Count III on behalf of himself and the TCPA Class.

136.   In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

137.   The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

138.   The TCPA defines ATDS as "equipment which has the capacity…to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

139.   According to findings of the Federal Communication Commission ("FCC"), the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

140.   The FCC requires prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. In *the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 ¶ 33 (2012).

141.   Vision Solar and/or its Telemarketers, violated 47 U.S.C. §227(b)(1)(A)(iii) by

placing not less than ten (10) telemarketing calls to Plaintiff's cellular phone using an ATDS and spoofed numbers without Plaintiff's prior express written consent.

142.    Plaintiff's belief that an ATDS was used to make the subject calls is based on: a) the occurrence of a pause and a click before an agent came on the line; b) the number and frequency of the calls received; and c) the absence of prior consent by Plaintiff and the fact that the calls were "cold calls" that were not made from a pre-existing list.

143.    Pursuant to 47 U.S.C. § 227(b)(3)(B), Vision Solar is liable to Plaintiff for a minimum of $500 per violation, which includes multiple violations for each call.

144.    Pursuant to 47 U.S.C. § 227(b)(3)(C), willful or knowing violations of the TCPA trigger treble damages.

145.    The conduct in violation of 47 U.S.C. §227(b)(1)(A)(iii) was willful and knowing.

146.    Plaintiff is entitled to have his damages trebled for the aforesaid willful and knowing violations of the TCPA.

## <u>COUNT IV</u>
### (Violations of the Telephone Consumer Protection Act, §227(c)(1) to (4)-on behalf of Plaintiff and the TCPA Class)

147.    Plaintiff incorporates the allegations from all preceding paragraphs as if fully set forth herein. Plaintiff brings this Count IV on behalf of himself and the TCPA Class.

148.    A private right of action exists pursuant to 47 U.S.C. § 227(c)(5) for violations of the regulations promulgated pursuant to the TCPA for the protection of telephone subscriber privacy rights.

149.    47 C.F.R. § 64.1200(c) and (d) set forth certain procedures with which a telemarketer must comply prior to the initiation of a telemarketing call.

150.    Vision Solar did directly, and through the Telemarketers, violate 47 C.F.R. § 64.1200 *et seq.* in at least the following respects:

a.      By failing to ensure that Vision Solar and the Telemarketers maintained a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);

b.      By failing to provide Plaintiff, upon his demand, Vision Solar's and the Telemarketers' do-not-call policy, in violation of 47 C.F.R. § 64.1200(d)(1);

c.      By failing to ensure that its personnel and the personnel of the Telemarketers were informed and trained in the existence and use of the do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);

d.      By failing to provide to Plaintiff the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and the telephone number or address at which the person or entity may be contacted, in violation of 47 C.F.R. § 64.1200(d)(4); and

e.      By engaging in and causing a pattern or practice of initiating telephone solicitations to Plaintiff's cellular phone without Plaintiff's express written consent on at least ten (10) occasions in violation of 47 U.S.C. § 64.1200(c)(2).

151.    Pursuant to 47 U.S.C.A. § 227(c)(5) and the regulations promulgated thereunder, Vision Solar is liable to Plaintiff for a minimum of $500 for each violation of the TCPA, which includes multiple violations for each call.

152.    Vision Solar's aforesaid conduct in violation of 47 U.S.C.A. § 227(c)(5) and the regulations promulgated thereunder, was willful and knowing.

153.    Plaintiff is entitled to have his single damages trebled for these willful and knowing violations.

## COUNT V
### (Violation of M.G.L., c. 93A, § 2– on behalf of Plaintiff and the Classes)

154.    Plaintiff incorporates the allegations from all preceding paragraphs as if fully set forth herein. Plaintiff brings this Count V on behalf of himself and the Classes.

155.    At all relevant times, Defendant was engaged in trade or commerce, for purposes

of M.G.L., c. 93A.

156.     M.G.L, c. 93A, § 2 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful." M.G.L., c. 93A, § 9 permits any consumer injured by a violation of c. 93A, § 2 to bring a civil action for damages and injunctive relief.

157.     As alleged in greater detail herein, Defendant has violated M.G.L., c. 93A, § 2 by making numerous unsolicited telephonic sales calls to Plaintiff and Class members and making numerous telemarketing calls to Plaintiff's and Class members' cellular telephones without prior express written consent and by violating the MTSA and the TCPA (including their   regulations) in various ways.

158.     Defendant's violations of the MTSA and the TCPA constitute unfair and deceptive conduct in violation of M.G.L., c. 93A, § 2, by virtue of 940 C.M.R., § 3.16(3) (providing that an act or practice violates c. 93A, § 2 "if it fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide consumers of this Commonwealth protection") and 940 C.M.R., § 3.16(4) (providing that an act or practice violates c. 93A, § 2 if "it violates the Federal Trae Commission Act … or other Federal consumer protection statute within the purview of M.G.L. c. 93A, § 2").

159.     Plaintiff and members of the Class have been injured as a result of Defendant's use and/or employment of unfair and deceptive acts and practices in at least the following ways: harassment, invasion of privacy, and interference resulting from the calls, as well as costs incurred as a result of wear and tear on their phones, mobile phone battery usage, and use of cellular calling time.

160.     Defendant's conduct in violation of c. 93A, § 2 was willful and knowing.

161.    Defendant, as a result of its violations of c. 93A, § 2 is liable to Plaintiff and Class members for actual damages or statutory damages, whichever results in a greater recovery, and multiple damages and attorneys' fees.

162.    Plaintiff made written demands for relief pursuant to c. 93A, § 9(3) on December 22, 2020 and June 1, 2021. Defendant has failed to provide a reasonable offer of relief in response to Plaintiff's written demands, and in fact, Defendant never provided any response to the written demands.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other Class members and Subclass members, demands judgment against Defendant as follows:

A.  That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the Classes and Subclass and appoint Plaintiff's counsel as counsel for the Classes and Subclass;

B.  That the Court Award actual monetary damages arising from Defendant's violations of law or statutory or liquidated damages for each violation, whichever is greater, and where applicable, multiple damages, attorneys' fees and costs;

C.  That the Court enjoin Defendant from additional and continuing violations of the MTSA, the TCPA and c. 93A; and

D.  That the Court award pre-judgment interest, costs and such further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims so triable.

Dated:   September 30, 2021

/s/ David Pastor_____
David Pastor, BBO # 391000
PASTOR LAW OFFICE, LLP
63 Atlantic Avenue, 3d Floor
Boston, MA 02110
Telephone: 617.742.9700
Email:  dpastor@pastorlawoffice.com

/s/ Richard B. Reiling
Richard B. Reiling, BBO #629203
BOTTONE | REILING
63 Atlantic Avenue, 3rd Floor
Boston, MA 02110
Telephone: 617.412.4291
Email:  richard@bottonereiling.com

*Counsel for Plaintiff and the Class*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document filed through the CM/ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing and

paper copies will be sent to those indicated as non-registered participants on September 30, 2021.


/s/ David Pastor_____
David Pastor

# EXHIBIT 1

**From:** **Verify@donotcall.gov**  Verify@DonotCall.gov
**Subject:** National Do Not Call Registry - Your Registration Is Confirmed
**Date:** February 28, 2016 at 4:43 PM
**To:** robertdoane@rcn.com



Thank you for registering your phone number with the National Do Not Call Registry. You successfully registered your phone number ending in 6577 on December 30, 2003. Most telemarketers will be required to stop calling you 31 days from your registration date.

Visit https://www.donotcall.gov  to register another number or file a complaint against someone violating the Registry.

*********************************************************************************************************************************

Please do not reply to this message as it is from an unattended mailbox. Any replies to this email will not be responded to or forwarded. This service is used for outgoing emails only and cannot respond to inquiries.