UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROBERT A. DOANE, on behalf of himself and others similarly situated, | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 1:21-cv-11285-IT |
| VISION SOLAR, LLC, | * * | |
| Defendant. | * | |

MEMORANDUM & ORDER

December 2, 2021

TALWANI, D.J.

Plaintiff Robert Doane brings this action against Vision Solar, LLC, alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, the Massachusetts Telemarketing Solicitation Act ("MTSA"), Mass. Gen. Laws ch. 159C, and Mass. Gen. Laws ch. 93A. Pending before the court is Vision Solar's Motion to Dismiss [#13] for failure to state a claim. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

**I.    Factual Allegations**

As alleged in the Amended Complaint [#12], the facts are as follows. Doane is a resident of Massachusetts. Am. Compl. ¶ 11 [#12]. He has a cellphone, which he registered with the national do-not-call registry in 2003. Id. at ¶¶ 41-42. Numbers registered with the national do-not-call registry are automatically included on the Massachusetts do-not-call list. Id. at ¶ 43.

Vision Solar is a solar and renewable energy company. Id. at ¶ 16. It relies on telemarketing companies, such as Solar Xchange and Energy Exchange, to generate customers for its solar installation business. Id. at ¶¶ 29-30. Neither Vision Solar, Solar Xchange, nor Energy Exchange have registered with the Massachusetts Office of Consumer Affairs and

1

Business Regulations as telephone solicitors. Id. at ¶ 90. At all times relevant, Vision Solar authorized Solar Xchange and Energy Exchange to solicit business on Vision Solar's behalf and controlled the telemarketers' actions regarding the types of customers solicited, the geographical areas of solicitation, the volume of calls, and the conduct of the telemarketing campaigns, among other things. Id. at ¶¶ 96-97. Once a telemarketer would generate a lead, the lead would be transferred to Vision Solar, which would then directly contact the customer to solicit sales of its solar services. Id. at ¶ 100.

Vision Solar, through its telemarketers, made not less than ten calls to Doane. Id. at ¶ 47. Each call proceeded in the same manner: when Doane picked up the phone, there was a delay and a click before an agent came on the line, and the agent then proceeded to read from the same script without identifying Vision Solar as the company for which the agent worked. Id. at ¶¶ 36, 45, 55, 59, 83, 85. The calls were made from "spoofed" numbers, meaning that Doane was unable to call back the number that appeared on his caller ID. Id. at ¶¶ 45-47. Whenever Doane requested the company's do-not-call policy, the agent disconnected. Id. at ¶ 51.

On October 22, 2020, Doane received one such call. Id. at ¶ 54. He asked the agent for the name of her company and was told it was Energy Exchange, which was subcontracted by Eversource. Id. at ¶ 57. Doane engaged the caller, was connected to her "supervisor," and scheduled an appointment for a solar consultation on October 24, 2020. Id. at ¶ 57-58. He provided his email address and received an email confirming the appointment. Id. at ¶ 60. When he later attempted to call back the number to see if it was valid, he found that it was a spoofed number. Id. at ¶ 62. However, a different number was included in the email, and Doane learned upon calling that the number belonged to Solar Xchange. Id. at ¶ 63.

2

On October 24, 2020, Doane received a call informing him that a representative was on his way and would be late for the solar consultation. Id. at ¶ 67. Shortly thereafter, an individual arrived and identified himself as being with Vision Solar. Id. After photographing the representative's badge and collecting information from him, Doane stated that he was not interested and terminated the visit. Id. at ¶ 68.

On November 5, 2020, Doane received another telemarketing call from an agent claiming for be from Smart Solar. Id. at ¶ 71. Doane again actively engaged with the agent, verified his personal information, was transferred to several different individuals, and ultimately spoke with someone who identified himself as being with Energy Exchange. Id. at ¶¶ 72-76. Doane scheduled another solar consultation, was told that a representative from Energy Exchange would come to his home, and received a confirmation email as before. Id. at ¶¶ 78-79, 81. After the call, Doane attempted to dial back the number and discovered that it had been spoofed. Id. at ¶ 80.

On November 7, 2020, two individuals arrived at Doane's residence. Id. at ¶ 82. Doane asked if they were with Solar Xchange, to which one of the agents responded that they were not but that they got their appointments from Solar Xchange. Id. Doane asked them for identification, after which the agents showed him their badges, which had the name Vision Solar on them. Id. Doane then told the agents that he had expected a different company and that he had made clear at his last meeting that he would not deal with Vision Solar again. Id.

II.     **Standards of Review**

In evaluating a motion to dismiss, this court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to

"state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).

"While most Rule 12(b)(6) motions are premised on a plaintiff's putative failure to state an actionable claim, such a motion may sometimes be premised on the inevitable success of an affirmative defense." Nisselson, 469 F.3d at 150. A court may allow a Rule 12(b)(6) motion based on an affirmative defense if "(i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." Id. (quoting Rodi v. S. New Engl. Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004)).

### III.   Discussion

#### A.   *TCPA Claims*

In 1991, Congress enacted the TCPA after determining that "[m]any consumers [were] outraged over the proliferation of intrusive, nuisance calls . . . from telemarketers." 47 U.S.C. § 227 note, Pub. L. No. 102-243, § 2(6)-(7). One way in which the TCPA regulates telemarketing calls is by prohibiting, with certain exceptions not applicable here, the use of an automatic telephone dialing system ("ATDS"). Id. § 227(b)(1)(A). An ATDS is defined by statute as "equipment which has the capacity—(A) to store or produce telephone numbers to be

called, using a random or sequential number generator; and (B) to dial such numbers." Id. § 227(a)(1).

The TCPA creates a private right of action to a "person" who receives more than one telephone call within a twelve-month period by a caller violating the regulations implemented under that section. Id. § 227(c)(5). Several such regulations are at issue here. The first makes it unlawful to "initiate any telephone solicitation to" a "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2). That includes cell phone owners who "may participate in the national do-not-call list." In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C. Rcd. 14014, 14039 (2003); see also 47 CFR § 64.1200(e). The second requires companies making automated calls to keep a written policy, available upon demand, for maintaining a do-not-call list. 47 CFR § 64.1200(d)(1). Third, "[p]ersonnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list." Id. § 64.1200(d)(2). And finally, "a person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." Id. § 64.1200(d)(4).

    1.    Use of an ATDS (Count III)

Doane first alleges that Vision Solar violated the TCPA by calling his cell phone number using an ATDS. Am. Compl. ¶¶ 135-46 [#12]. Vision Solar contends that Doane has failed to state a claim because (1) he has not pleaded sufficient facts to support an inference that an ATDS was used to place any of the alleged call at issue, and (2) he expressly consented to receive calls purportedly from Vision Solar. Def's Mem. 7-12 [#14]. The court disagrees.

As to the first issue, Doane has adequately alleged use of an ATDS. "[R]ecognizing that it is difficult for a plaintiff to allege precise facts regarding the technical specifications of a dialing system prior to discovery," courts in this district have concluded that "indirect allegations are adequate to allow a court to make a reasonable inference that the calls complained about were made using an ATDS." Rosenberg v. LoanDepot.com LLC, 435 F. Supp. 3d 308, 323 (D. Mass. 2020). Such indirect allegations may include "[t]he promotional content of calls, the fact that they came from 'spoofed' numbers or the timing and volume of such calls." Id.

Here, Doane alleges (1) the presence of a distinctive pause and click at the beginning of the call, (2) the receipt of multiple calls, (3) use by the telemarketers of the same promotional script, and (4) that the calls were made from spoofed numbers. Taken in the light most favorable to Doane, these support the inference that an ATDS was used, and discovery is the appropriate time for Doane to learn about the precise technology used to generate the alleged calls and whether that equipment qualifies as an ATDS.[1]

Vision Solar's second argument is that Doane consented to the calls. Def's Mem. 7-12 [#14]. As an initial matter, consent is an affirmative defense that a defendant must plead and prove. Breda v. Cellco P'ship, 934 F.3d 1, 5 n.4 (1st Cir. 2019) ("we understand consent to be an affirmative defense, which the caller has the burden to prove; lack of consent is not an element of the called party's claim"). So, on a motion to dismiss, a plaintiff's alleged consent cannot be grounds for dismissal unless the properly considered facts "suffice to establish" this failure "with certitude." Rodi, 389 F.3d at 12; see also Jones v. Bock, 549 U.S. 199, 212 (2007) (quoting Leveto v. Lapina, 259 F.3d 156, 161 (3rd Cir. 2001)) ("a complaint may be subject to dismissal

---

[1] Vision Solar also argues that Doane has not adequately pleaded use of a prerecorded or artificial voice. Def's Mem. 10-11 [#14]. However, Doane's TCPA claim is not predicated on any such allegations, so the purported pleading failure is of no import.

under Rule 12(b)(6) when an affirmative defense . . . appears on its face"). In this case, Doane has alleged that he actively engaged with the telemarketers, providing his personal information and arranging in-person consultations, which Vision Solar contends demonstrates express consent. Def's Mem. 7-12 [#14]. But while Vision Solar's argument may apply to the follow-up calls that Doane received regarding the scheduled in-person visits, those are not the calls at issue here. Rather, the calls that are the subject of Doane's Amended Complaint [#12] are the telemarketing calls that he alleges were initiated without his "*prior* express consent." 47 U.S.C. § 227(b)(1)(A) (emphasis added). The fact that he engaged with the telemarketers during those calls is irrelevant; the violations occurred at the moment that the telemarketing calls were initiated. Doane has therefore adequately pleaded his claim.[2]

       2.       Violations of TCPA Implementing Regulations (Count IV)

Doane next alleges that Vision Solar violated a number of the TCPA's implementing regulations by (1) failing to maintain a do-not-call list; (2) failing to provide a do-not-call policy; (3) failing to ensure that its personnel were informed and trained in the existence and use of the do-not-call list; (4) failing to provide Doane, during the alleged telemarketing calls, with the name of the caller, the name of the entity on whose behalf the call was made, and contact information; and (5) calling his number despite its inclusion on the national do-not-call registry. Am. Compl. ¶ 150 [#12] (citing 47 C.F.R. §§ 64.1200(c)(2), (d)(1)-(2), (d)(4)).

Vision Solar makes no arguments for dismissal specific to this claim but suggests that its consent argument also applies to these alleged regulatory violations. Def's Mem. 12 [#14].

---

[2] The court also notes that under the TCPA's implementing regulations, express "*written* consent" is required for a call "that includes or introduces an advertisement or constitutes telemarketing" to a cell phone. 47 C.F.R. § 64.1200(a)(2).

Where the court has already found that Vision Solar's consent argument fails, dismissal is not warranted as to this claim.

      B.      *MTSA Claims (Counts I-II)*

Like the TCPA, the Massachusetts Telemarketing Solicitation Act ("MTSA"), Mass. Gen. Laws ch. 159C, regulates telemarketing calls to consumers. Vision Solar again argues that Doane consented to the calls and that his claims must be denied, Def's Mem. 13 [#14], and the court again denies the motion on that basis.

Regarding Vision Solar's other arguments, section 4 of the MTSA provides that no telemarketer shall "intentionally cause to be installed or shall intentionally use a blocking device or service to circumvent a consumer's use of a call identification service or device." Mass. Gen. Laws ch. 159C, § 4. Vision Solar claims that Doane has failed to allege use of such a device. Def's Mem. 13 [#14]. Not so. Doane alleges that he returned several of the telemarketing phone calls and discovered that the numbers had been spoofed. That is sufficient to allege that Vision Solar "circumvented" Doane's use of caller identification within the meaning of the statute.

Section 5A requires telephone solicitors to disclose certain information within the first minute of a call, including the call's purpose, the name of the telemarketing company, the name of seller whose goods or services are being offered, and a description of the goods or services being offered. Mass. Gen. L. c. 159C, § 5A(a). Vision Solar argues that Doane's claim fails where his allegations "actually state[] in great detail that he spoke to numerous individuals . . . all of whom told [him] who they were working with/for and the reason for the calls." Def's Mem. 13-14 [#14]. But while the telemarketers may have provided *some* of that information, Doane alleges that none of the agents ever identified Vision Solar as the seller of the products being marketed, as required by the statute. He has therefore stated a claim.

C.     *Chapter 93A Claim (Count V)*

Doane's last claim alleges a violation of Massachusetts' consumer protection statute, which prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce," and grants a cause of action to a person injured by such acts or practices. Mass. Gen. Laws ch. 93A, §§ 2, 9. To state a claim, a plaintiff must establish

> first, that the defendant has committed an unfair or deceptive act or practice; second, that the unfair or deceptive act or practice occurred "in the conduct of any trade or commerce;" third, that the plaintiff suffered an injury; and fourth, that the defendant's unfair or deceptive conduct was a cause of the injury.

Rafferty v. Merck & Co., Inc., 479 Mass. 141, 161, 92 N.E.3d 1205 (2018). In determining whether an act is "unfair" within the meaning of the statute, courts consider "(1) whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers. . . ." Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 243 (1st Cir. 2005) (quoting PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596, 321 N.E.2d 915 (1975)). An act is "deceptive" for these purposes "if it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted." Lowell Gas Co. v. Att'y Gen., 377 Mass. 37, 51, 385 N.E.2d 240 (1979).

Doane's chapter 93A claim is based solely on the alleged TCPA and MTSA violations. While statutory violations can provide evidentiary support for a chapter 93A claim, "the case law is clear that a statutory violation is not a per se violation of ch. 93A." Swenson v. Yellow Transp., Inc., 317 F. Supp. 2d 51, 55 (D. Mass. 2004) (citing Darviris v. Petros, 59 Mass. App. Ct. 329, 330-31, 795 N.E.2d 1196 (2003)). Rather, "a plaintiff bringing an action . . . under [chapter 93A] must allege and ultimately prove that she [or he] has, as a result [of the statutory

violation], suffered a *distinct injury or harm* that arises from the claimed unfair and deceptive act." Shaulis v. Nordstrom, Inc., 865 F.3d 1, 10 (1st Cir. 2017) (quoting Tyler v. Michaels Stores, Inc., 464 Mass. 492, 503, 984 N.E.2d 737 (2013)) (emphasis in original). Here, Doane claims that the calls are unfair because they cause "harassment, invasion of privacy, and interference resulting from the calls, as well as costs incurred due to wear and tear on . . . phones, cellular phone battery usage, and use of cellular calling time." Am. Compl. ¶ 118 [#12]. While such facts suggest that the calls are bothersome, they do not support an allegation that Vision Solar caused Doane the type of "substantial injury" required to demonstrate unfairness under chapter 93A. This claim is therefore dismissed.

### IV. Conclusion

For the foregoing reasons, Vision Solar's Motion to Dismiss [#13] is GRANTED IN PART as to Count V and DENIED IN PART as to Count I-IV.

IT IS SO ORDERED

December 2, 2021                                          /s/ Indira Talwani
                                                          United States District Judge